# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 29

### OCTOBER TERM, A.D. 2013

*February 25, 2014*

|  |  |
|---|---|
| THE ESTATE OF H. KENT DAHLKE, by and through its Personal Representative Susan M. Jubie, <br><br> Appellant <br> (Plaintiff), <br><br> and <br><br> THE ESTATE OF SARA WESTERBERG DAHLKE, by and through its Personal Representative Susan M. Jubie, and SUSAN M. JUBIE, individually, <br><br> Appellants <br> (Defendants), <br><br> v. <br><br> JAY H. DAHLKE, KURT M. DAHLKE, HEARTHSIDE CARE CENTER, UMPQUA HOMES FOR THE HANDICAPPED, and M. SCOTT McCOLLOCH, <br><br> Appellees <br> (Defendants). | S-13-0077 |

*Appeal from the District Court of Big Horn County*
*The Honorable John G. Fenn, Judge*

*Representing Appellants:*
    Eldon E. Silverman, Esq., of Preeo Silverman Green & Egle, P.C., Denver, Colorado; Randy L. Royal, Esq., Greybull, Wyoming

*Representing Appellees Jay H. Dahlke and Kurt M. Dahlke:*
    Edward G. Luhm, Esq., Worland, Wyoming

*Representing Appellees Umpqua Homes for the Handicapped and Hearthside Care Center:*
    Laurence Stinson, Stinson Law Group, P.C., Cody, Wyoming

*Representing M. Scott McColloch:*
    No appearance

*Before KITE, C.J., and HILL, VOIGT,\* BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    The Estate of J. Kent Dahlke included a checking account he held jointly with his surviving wife Sara Dahlke.  There were irregularities in the administration of the estate, including failure to assure that the heirs waived a hearing on a decree of distribution, and failure to advise Sara Dahlke of her statutory elective share.  Sara served as the personal representative of Kent's estate.  After Sara died, her daughter Susan Jubie, acting as the subsequent personal representative of Kent's estate, the personal representative of Sara's estate, and individually, sought to set aside the decree of distribution of Kent's estate five years after it was entered and its assets were distributed to the devisees.  The district court denied the requested relief.  We affirm.

## ISSUES PRESENTED

[¶2]    1.      Was the decree of distribution interlocutory and therefore subject to being set aside or revised because the personal representative was never discharged and the estate was never closed?

2.      Was the decree of distribution void under Wyoming Rule of Civil Procedure 60(b)(4) due to irregularities in the probate proceeding, including failure to obtain waivers of hearing and failure to advise the surviving spouse of a statutory right to an elective share?

3.      Did the district court err in failing to set the decree aside because of fraud on the court or exceptional circumstances under Wyoming Rule of Civil Procedure 60(b)(6)?

4.      Did the existence of a possible malpractice claim against the estate's attorney prevent the district court from setting the decree of distribution aside?

## FACTS

[¶3]    J. Kent (Kent) and Sara Westerberg Dahlke (Sara) were married in Oregon in 1987.  Both had children from prior marriages.  Appellees Jay H. Dahlke and Kurt M. Dahlke are Kent's adult sons, and he was also survived by another adult son and daughter.  Appellant Susan Jubie is Sara's daughter.

[¶4]    Kent owned and operated a bar called the Barge Inn in Newport, Oregon before and after he and Sara were married.  He also owned other Oregon real estate, including apartments he had acquired before he married Sara.  Sara was not technically employed during the marriage and therefore relied upon Kent for support, but she worked with him at the Barge Inn without set compensation.

1

[¶5]   The couple moved to Greybull, Wyoming around 1999 because Kent believed the dry climate there would alleviate respiratory problems from which he suffered. The couple purchased a home which they owned as tenants by the entirety.

[¶6]   The Dahlkes established a joint checking account at Big Horn Federal Savings Bank in Greybull in 1999. They held the account as "joint tenants with right of survivorship and not as tenants in common." The parties used the money in the account to pay their living expenses. It was at least in part funded by payments of rent from Kent's apartments and the Barge Inn.

[¶7]   In 2003, Kent sold some or all of the Oregon apartments, and the sales proceeds of $1,998,893.75 were deposited by wire transfer into the Big Horn Federal checking account on May 23 of that year. The couple continued to pay their living expenses from the account. Sara paid the bills and cared for Kent as his health deteriorated.

[¶8]   Kent died at home on December 31, 2003, leaving a will he had executed in 2001. In it, he made specific bequests of $100,000 to each of his four children and to Sara's daughter, Appellant Susan Jubie. He also left $30,000 to Hearthside Care Center and $40,000 to the Umpqua Home for the Handicapped, both of which had cared for a daughter who predeceased him. He willed his tangible personal property to Sara. Sara was nominated as personal representative of the estate.

[¶9]   The residue of Kent's estate was to be paid into a marital trust for Sara's benefit if she survived him. Sara was nominated as trustee, with Appellant Jay Dahlke to serve as successor trustee if she was unwilling or unable to serve. The marital trust was to distribute the income from the trust property to Sara as often as monthly and no less than quarterly. The trustee was authorized to invade principal as necessary for Sara's support, maintenance, and education. Upon Sara's death, the trustee was to pay all accrued and undistributed income to her estate, and to pay certain amounts from the trust principal to cover some taxes and all administrative expenses of her estate. The balance of the trust principal was then to be paid to Jay and Kurt Dahlke if they survived Sara, with the share of either who predeceased her to go to the other or to that son's issue.[1]

[¶10] Sara contacted Greybull attorney M. Scott McColloch (McColloch) about probating Kent's estate in August of 2004, about eight months after his death. At their first meeting, Sara was primarily concerned about transferring title to the parties' home. McColloch advised her that it would not be an asset of the estate because it was held in a tenancy by the entireties, and that it would only be necessary to record an affidavit of survivorship with Kent's death certificate to transfer it to her alone. He asked Sara to

---

[1] The will provided for distribution of the trust res to Jay and Kurt's children if they both predeceased Sara, for the creation of a trust for the benefit of those children if they were minors at the time, and for a contingent distribution to Kent's nieces and nephews. It is not necessary to discuss these provisions of the will in further detail because Sara died before Jay and Kurt.

prepare a list of Kent's assets so that they could begin probate proceedings. When Sara did not promptly return with the list, McColloch reminded her that she needed to do so by a letter he sent in September of that same year.

[¶11] Sara came back to McColloch's office with a list of property some time before January 26, 2005, when the petition to probate Kent's will was filed in Big Horn County District Court. Among the assets she identified was the Big Horn Federal account, which then contained about $1,300,000.[2] The parties agree that account would normally have become Sara's alone because it was held as joint tenants with a right of survivorship, and that it would not therefore have been an asset of Kent's probate estate. However, McColloch testified, subject to objections based on Wyoming's version of the Dead Man's statute,[3] that Sara told him that the funds should be included in Kent's estate, even though the two discussed that the only assets subject to probate were those belonging to Kent. McColloch indicated that Sara told him that the funds were from real estate Kent owned before they were married, and that she was supposed to have placed them in a separate account in his name, but simply failed to do so. He advised her that this would not be a problem if she included the balance left in the account in the estate.

[¶12] The petition for probate listed the Big Horn Federal account as an asset of the estate. By then it contained $1,424,318.00. The entire estate was valued at $2,046,212.30 in the inventory, meaning that the account was by far its largest asset. Appellants point out that inclusion of the account substantially increased the statutory attorney fee.[4] Sara was duly appointed personal representative of the estate.

---

[2] The account balance fluctuated as withdrawals for living expenses were made and revenue from apartment rentals and the lease of the Barge Inn was deposited.

[3] Wyo. Stat. Ann. § 1-12-102 (LexisNexis 2013) provides as follows:

> In an action or suit by or against a person who from any cause is incapable of testifying, or by or against a trustee, executor, administrator, heir or other representative of the person incapable of testifying, no judgment or decree founded on uncorroborated testimony shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his trustee, executor, administrator, heir or other representative. In any such action or suit, if the adverse party testifies, all entries, memorandum and declarations by the party incapable of testifying made while he was capable, relevant to the matter in issue, may be received in evidence.

Our resolution of this case does not require us to determine whether this statute is applicable or not, and we therefore do not address that issue.

[4] Wyo. Stat. Ann. § 2-7-804(a) (LexisNexis 2013) provides as follows:

[¶13] The probate proceedings were by any standard irregular and did not, in alarming respects, comply with the probate code. Sara was never advised of her right to an elective share against the will under Wyo. Stat. Ann. § 2-5-101(a). Attorney McColloch applied for and was authorized his entire statutory fee on July 13, 2005, eight months before filing a final report, accounting, and petition for distribution of the estate. Sara's fee as personal representative was also authorized at that time.[5] Sara never opened an account for the funds belonging to the estate, instead using the Big Horn Federal account for all disbursements. She wrote the checks for the specific bequests to the charities, Kent's surviving children, and Appellant Susan Jubie from that account about four months before the district court entered an order of final distribution authorizing these payments.

[¶14] A final report, accounting, and petition for distribution signed by Sara Dahlke was filed on March 9, 2006. The document indicated that the heirs had waived notice of any hearing required by Wyo. Stat. Ann. § 2-7-811(c), and that they consented to the distribution proposed in the petition. In reality, although McColloch claims to have prepared and sent the notices to the heirs, none of them returned the waivers, and they therefore could not have been attached to the petition.

---

(a) If the court determines that by reason of unusual circumstances the fee computed hereafter is not equitable after considering the time and effort reasonably expended and the responsibility with which the personal representative was charged, the court may allow such additional fee as the court determines proper. The court shall allow the attorney for the estate fees for ordinary services rendered to the estate unless the attorney files a written waiver as to a part or all thereof. The fees shall be computed on the basis of the amount of the decedent's probate estate accounted for as follows:

(i) For the first one thousand dollars ($1,000.00) of the basis, ten percent (10%);
(ii) For the amount over one thousand dollars ($1,000.00) and not exceeding five thousand dollars ($5,000.00) of the basis, five percent (5%);
(iii) For the amount over five thousand dollars ($5,000.00) and not exceeding twenty thousand dollars ($20,000.00) of the basis, three percent (3%);
(iv) For all sums over twenty thousand dollars ($20,000.00) of the basis, two percent (2%).

[5] Appellants point out that Sara would have been better off to receive that amount from the Big Horn Federal account from which it was paid, because she had to pay income tax on the personal representative fee.

[¶15] An order approving the final report, accounting, and decree of distribution (hereinafter decree of distribution) was entered without hearing on August 1, 2006.[6] It incorrectly recited that the probate court had examined waivers of notice of hearing. The order directed the personal representative to file a petition for discharge when all estate assets had been distributed. No petition for discharge has ever been filed, and therefore no order discharging Sara as personal representative or closing the estate has ever been entered.

[¶16] In addition, the balance of the Big Horn Federal account was not transferred to the marital trust, and so that trust was not funded until 2008, when an ancillary probate in Oregon resulted in the transfer of other assets to it. In other words, the funds from the Big Horn Federal account remained under Sara's individual control rather than being transferred to an account owned by the trust.

[¶17] In the decision letter described below, the district court found that a certificate of service on the decree of distribution indicated that it had been served on all distributees after it was entered, and McColloch testified that it was his practice to send executed copies after such decrees are signed.[7] He specifically testified that he sent a signed copy of the decree of distribution to Sara, who would have known of the proposed distribution anyway, because she signed the final report, accounting and petition for distribution under oath.

[¶18] An ancillary probate was filed in Oregon in order to dispose of Kent's assets there. Sara Dahlke served as the personal representative. The probate court for Lincoln County, Oregon, distributed the assets, including the Barge Inn, to Sara Dahlke as trustee of the marital trust established by Kent's will by order dated March 6, 2008. Sara subsequently deeded the Barge Inn property to the trust in her capacity as the Oregon personal representative.

[¶19] The attorney retained to conduct the probate proceedings in Oregon evidently realized that the Big Horn Federal account in Wyoming was jointly held with right of survivorship, and that Sara had paid the specific bequests to the charities and the parties' children from it. He did not appear to be aware that the Big Horn Federal account had been included in the Wyoming probate of Kent's estate based on the correspondence in the record.

[¶20] The Oregon attorney wrote to McColloch on March 12, 2008, expressing his understanding that the Big Horn Federal account passed to Sara on Kent's death under

---

[6] The district judge who entered the decree of distribution retired shortly after it was entered, and all proceedings in this case were therefore handled by other judges.

[7] We have been unable to locate the certificate of service referred to by the district court in the record sent to the Supreme Court. The probate file was not designated as part of the record on appeal.

5

Wyoming law, and that Sara had paid the bequests in Kent's will, totaling $590,000, from that account. He suggested that Sara be reimbursed for those payments with the Barge Inn property (also called the Bay Haven Tavern), as well as certain partnership and brokerage accounts. This would mean that the marital trust established by Kent's will would have few or no assets to generate income for Sara or to pass on to Jay and Kurt Dahlke after Sara's death. The attorney also pointed out that his proposed solution might have significant tax consequences for Sara.

[¶21] McColloch responded by letter dated March 17, 2008, agreeing that under Wyoming law the joint tenancy account would not become part of Kent's estate. He did not advise the Oregon attorney that the account had in fact been included in Kent's Wyoming estate. He likewise did not explain that this was because Sara had told him that the funds from the sale of Kent's apartments were meant to be deposited in a separate account and should therefore be included in the estate, as he later testified to be the case.

[¶22] Sara's health began to fail, and her daughter Susan Jubie began to assist with her affairs. Sara established The Sara L. Dahlke Living Trust on April 15, 2010, appointing Ms. Jubie as its trustee. This trust was to deliver all of its assets to Ms. Jubie on Sara's death. On April 30, 2010, Sara deeded the Barge Inn property from the Kent Dahlke marital trust to the Sara Dahlke trust, meaning that the asset would pass to Ms. Jubie after Sara died, rather than to Jay and Kurt Dahlke as provided in Kent's will. This transfer has led to litigation in Oregon.

[¶23] On April 26, 2010, with the help of another Wyoming attorney, Sara and Ms. Jubie drafted a letter for Sara to send to McColloch. It indicated that Sara believed he had made substantial mistakes in the handling of Kent's estate, including listing the Big Horn Federal account as one of its assets. It asked that he explain how other property included in the estate was valued, and for a refund of the portion of McColloch's fee related to the claimed erroneous inclusion of the Big Horn Federal account. Sara died shortly thereafter on May 21, 2010.

[¶24] Ms. Jubie was appointed as personal representative of both the Kent Dahlke and Sara Westerberg Dahlke estates.[8] On June 24, 2011, as personal representative of the Kent Dahlke estate, she filed a complaint against all of Kent's children, Umpqua Homes and the Hearthside Care Center, Sara's estate, herself individually as the recipient of a specific bequest under Kent's will, and McColloch. She sought an equitable order setting aside the August 1, 2006 decree of distribution and requiring the recipients of the individual bequests to return the funds to Kent's estate, as well as an order requiring McColloch to pay back all or part of his fee for handling the estate. She also sought a

---

[8] In this appeal, no one has expressed concern that Ms. Jubie might have a significant conflict of interest given the conflicting provisions of the Kent Dahlke will and the Sara Dahlke trust. It would appear that someone asking that the devisees under Kent's will be required to return property received so that it can be awarded to her might have interests that are not entirely reconcilable.

6

declaratory judgment that the Big Horn Federal account should not have been included in Kent's estate.[9]

[¶25] The parties filed cross-motions for summary judgment,[10] which the district judge resolved in a thorough decision letter dated January 2, 2013. The court denied Appellants'[11] motion for partial summary judgment and granted the defense motions, holding as follows:

- The decree of distribution was a final order, and Appellants' remedy if they disagreed with its contents was to appeal rather than to try to reopen the estate. The court went further and considered whether Appellants' complaint might qualify as a W.R.C.P. 60(b) motion for relief from a final judgment, and determined that a Rule 60(b) motion is not a substitute for an appeal.

- Appellants' claims for equitable relief were barred by laches because most if not all of the irregularities in the administration of the estate could have been discovered in a reasonable time, and the delay in bringing the action was inexcusable. In addition, there would be significant prejudice to innocent parties who had done nothing to cause the claimed errors and might be unable to repay the money.

- The district court sitting in probate had jurisdiction to enter the decree of distribution in spite of the absence of waivers of notice and the hearing required by statute. While entering the order without the waivers or holding a hearing was probably error, it was not error of such magnitude as to deprive the court of jurisdiction. In addition, Sara knew of the order, and she was the only person then arguably aggrieved by it.

- There was no denial of due process because Sara knew of the proposed distribution and of the proceedings to obtain the order, and yet did not object. Moreover, all devisees had notice of the order after it was entered and did nothing to set it aside until Ms. Jubie filed suit. Any failure to advise Sara of her forced share was harmless because she received more than 25% of the estate under the will.

- The court would not determine the ownership of the Barge Inn because that issue would be determined by the Oregon courts. That decision has not been appealed.

---

[9] The parties allegedly harmed by the inclusion of the Big Horn Federal account in Kent's estate were Sara's estate and her trust, not Kent's estate. Its alignment as plaintiff is therefore puzzling.

[10] Appellants moved for partial summary judgment, asking the district court to determine that the order approving the report, accounting and decree of distribution be vacated, but to reserve the question of how to recover or equalize what they claim were improper distributions for later proceedings.

[11] Susan Jubie is the only person appealing the district court's decision, but because Kent's and Sara's estates are also parties, we refer to Appellants in the plural.

7

- A motion by Hearthside Care Center and Umpqua Homes to dismiss for lack of personal jurisdiction was denied as moot because of the rulings listed above.

This appeal was timely perfected.

## STANDARD OF REVIEW

[¶26]  Our standard for review of orders granting summary judgment under W.R.C.P. 56 has been stated often and requires no further elaboration:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. [*Snyder v. Lovercheck,* 992 P.2d 1079, 1083 (Wyo. 1999)]; *40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.* If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh,* 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.,* 887 P.2d 515, 519 (Wyo. 1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh,* 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275 (Wyo. 1997).

> *Lindsey v. Harriet,* 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011). We can affirm an order granting summary judgment on any basis appearing in the record. *Magin v. Solitude Homeowner's Inc.,* 2011 WY 102, ¶ 20, 255 P.3d 920, 927 (Wyo. 2011) (citing *Walker v. Karpan,* 726 P.2d 82, 89 (Wyo. 1986)).

8

*DiFelici v. City of Lander*, 2013 WY 141, ¶ 7, 312 P.3d 816, 819 (Wyo. 2013).

[¶27] Appellants also argue that the trial court should have granted relief under W.R.C.P. 60(b)(4) or 60(b)(6). We have held that the decision to grant or deny relief under Rule 60(b) is generally entrusted to the discretion of the district court, and that "appellate review is limited to the question of whether the trial court abused its discretion." *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993) (quoting *Carlson v. Carlson*, 836 P.2d 297, 301 (Wyo. 1992)).

[¶28] However, Appellants contend that the decree of distribution was void. We have held that courts have no discretion to grant or deny relief when a judgment has been determined to be void, and must set it aside if it is. *2-H Ranch Co., Inc. v. Simmons*, 658 P.2d 68, 73 (Wyo. 1983).

[¶29] Some of the issues raised by Appellants implicate other standards of review, which we will address when we reach those questions.

## DISCUSSION

### Finality of the "Order Approving Final Report and Accounting, and Decree of Distribution"

[¶30] Appellants argue that because the probate court never entered an order discharging Sara as personal representative and closing the estate, it remains open. They contend that the decree of distribution therefore could and should have been revoked or modified, and that the time for filing an appeal has not yet begun to run.

[¶31] Wyoming Rule of Appellate Procedure 1.05(a) defines an appealable order as "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment." W.R.A.P. 1.05(a). We have held that an appealable order under Rule 1.05(a) has "three necessary characteristics. . . . It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues." *In re E.R.C.K.*, 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo. 2013) (quoting *In re KRA,* 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004)). Whether an order is final and appealable is a question of law, which we decide de novo without deference to the trial court's determinations. *Bourke v. Grey Wolf Drilling Co., LP*, 2013 WY 93, ¶ 15, 305 P.3d 1164, 1167 (Wyo. 2013) (citing *In re MN,* 2007 WY 189, ¶ 4, 171 P.3d 1077, 1080 (Wyo. 2007)).

[¶32] We must review portions of the probate code to determine whether the decree of distribution was appealable. Wyo. Stat. Ann. § 2-2-101 provides in pertinent part as follows:

A decree of distribution entered by the district court in probate, pursuant to W.S. 2-7-807 or 2-7-813, shall be a final determination of title as to assets described therein, as to all distributees served with notice, or who have waived notice, of the hearing provided for in W.S. 2-7-807 or 2-7-811, as the case may be. As to all other parties, an action may be brought and maintained at any time prior to the entry of final decree of distribution under W.S. 2-7-813, by or against the personal representative in the district court, sitting in probate, seeking any legal or equitable remedy as to any interest in property, real or personal, in which the estate asserts or claims any interest. In addition, all causes cognizable in the district court in any civil action may be brought and maintained, at any time prior to the entry of final decree of distribution under W.S. 2-7-813, by or against a personal representative in the district court sitting in probate which granted the letters to the personal representative.

Wyo. Stat. Ann. § 2-2-101 (LexisNexis 2013).

[¶33] Wyo. Stat. Ann. § 2-7-813 requires a final order to be entered after a hearing on any objections to distribution have been heard under § 2-7-811:

Upon approval by the court of the final report and accounting and petition for distribution with any changes, corrections, amendments or supplements as may be required, the court shall enter a final decree of distribution. In the decree the court shall name the persons and the proportions or parts of the estate to which each is entitled. The personal representative shall proceed forthwith to make the distributions. The distributees may demand, sue for and recover their respective shares from the personal representative or any person having the same in possession.

Wyo. Stat. Ann. § 2-7-813 (LexisNexis 2013).

[¶34] We note that the statute describes the decree of distribution to be entered as "final." Section 2-7-814 allows the probate court to discharge the personal representative once she has proven that she has properly completed all acts required of her, including distribution of the property of the estate "to the parties entitled." Wyo. Stat. Ann. § 2-7-814 (LexisNexis 2013). The phrase "to the parties entitled" unquestionably refers to the parties the court has determined to be entitled to receive money or property in the final decree.

[¶35] Finally, § 2-7-815 permits the court on its own motion or upon the application of any party to close the estate when no known assets remain for administration or distribution. Wyo. Stat. Ann. § 2-7-815 (LexisNexis 2013).

[¶36] As we have said in previous cases:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.
>
> Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.
>
> Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.
>
> Whether a statute is ambiguous is a question of law. A statute is unambiguous if reasonable persons are able to agree as to its meaning with consistency and predictability, while a

11

statute is ambiguous if it is vague or uncertain and subject to varying interpretations.

*Rock v. Lankford*, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080-81 (Wyo. 2013) (quoting *Redco Const. v. Profile Props., LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415-16 (Wyo. 2012)).

[¶37] The legislature is presumed to act in a thoughtful and rational manner with full knowledge of existing law, and statutes are to be construed in harmony with existing law and as part of an overall and uniform system of jurisprudence. *Redco*, ¶ 37, 271 P.3d at 418. We find the statutory scheme to be unambiguous and consistent with this presumption.

[¶38] We believe the legislature used the term "final decree" in § 2-7-813 advisedly. As of the date a decree of distribution is entered, the share of the estate each heir or devisee will be awarded has been determined, and that person can meaningfully challenge the ruling if she believes it to be incorrect. On the other hand, distribution of estate assets may take considerable time, as when real property must be sold and the proceeds of the sale distributed. If a decree of distribution were not final and appealable, an aggrieved party would be denied a prompt appeal of the probate court's distribution decision. *Cf.*, *In re Hartt's Estate*, 75 Wyo. 305, 380-82, 295 P.2d 985, 1014-15 (1956). It would serve no useful purpose to delay an appeal until distribution had been made, and even further until an order closing the estate had been entered. In this particular case, nearly eight years have passed without such an order, so far as we can tell from the record.

[¶39] We addressed the finality of a decree of distribution in *In re Estate of Novakovich*, 2004 WY 158, 101 P.3d 931 (Wyo. 2004). In that case, Stringari claimed damages for injuries he suffered in a car accident with Novakovich. By the time he found counsel and sought to file a personal injury action, Novakovich had died, and his estate had been probated and closed. The appeal raised the question of whether there was adequate notice of the probate for the decree of distribution and order closing the estate to be final as to Stringari. In discussing what discovery Stringari was entitled to conduct on this issue, we observed:

> In reaching this conclusion, we consider the nature of a final decree of distribution and an order closing an estate. Wyo. Stat. Ann. §§ 2-7-813 through -815 (LexisNexis 2003) provide for the final distribution, the discharge of the personal representative, and the closing of the estate. The orders generated by this process represent the final orders of the probate proceedings. Although the probate statutes specifically provide for probate estates to be reopened under certain circumstances, the decree of distribution and the order

12

closing the estate are final judgments. Indeed, the probate code provides that a decree of distribution is a final judgment adjudicating title to the assets of the estate and the rights of beneficiaries and claimants. Wyo. Stat. Ann. § 2-2-101 (LexisNexis 2003). We have held, "the decree of distribution is final and res judicata if it is not appealed, regardless of any errors in the decree." *Taylor v. Estate of Taylor,* 719 P.2d 234, 238 (Wyo. 1986). The final orders from a probate proceeding are therefore entitled to the same weight as a final judgment in any other civil proceeding.

*Novakovich,* ¶ 19, 101 P.3d at 936.

[¶40] Appellants argue that the foregoing language indicates that this Court determined that both the decree and the order closing the estate must be entered before there is an appealable order. We disagree. The opinion used the words "final judgments" (plural), not "final judgment" (singular). As already noted, the decree of distribution determines the share of the estate heirs and devisees are entitled to receive, and it is final and appealable for that reason. After the decree is entered, the personal representative must still complete certain tasks which she may or may not perform properly, and a failure to do so might result in claims against the representative and/or the estate. The order closing the estate is a final determination that the personal representative has performed her duties and properly distributed its assets as directed.

[¶41] The quoted language from *Novakovich* therefore means that there can be two final appealable orders, one which determines the parties to whom the estate is to be distributed and how much they will receive, and another which determines that the personal representative has properly completed the decreed distribution and administration of the estate. Although these orders may be presented almost simultaneously in some cases, as in *Novakovich*, they will not always be, as is the case here.

[¶42] We agree with the district court that the "Order Approving Final Report and Accounting, and Decree of Distribution" was a final appealable order as a matter of law, and that it was therefore not interlocutory in nature. There was no appeal from the decree, and it is final unless it is void for the reasons claimed by Appellants.

**Voidness of the Decree of Distribution**

[¶43] Appellants argue that the decree of distribution was void under W.R.C.P. 60(b)(4), or that exceptional circumstances exist to set it aside under W.R.C.P. 60(b)(6). The pertinent parts of Rule 60 are as follows:

(b) *Other reasons*. – On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; . . . (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

W.R.C.P. 60(b).

[¶44] We note that Appellants did not file a Rule 60 motion to set aside the decree in the probate case as we might have expected.[12] Their motion for summary judgment and supporting memo and their responses to the other parties' summary judgment motions did not mention the rule.

[¶45] Appellants point out that federal courts have held that an independent action challenging a judgment may be treated as a Rule 60(b) motion, and vice versa. *United States v. Buck*, 281 F.3d 1336, 1341-42 (10th Cir. 2002); *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 n.7 (5th Cir. 1970). The district court chose to address the Rule 60 grounds in an effort to give the legal merits of Appellants' claims every consideration, and we will do the same, at least as to arguments that we can determine were presented to the district court.

### *Jurisdiction*

[¶46] Appellants argue that the decree of distribution was void because the district court sitting in probate did not have jurisdiction to enter it inasmuch as the heirs and distributees did not waive notice or a hearing concerning it. We have discussed the standard for determining whether a court has acted in excess of its jurisdiction, or whether it has only erred while exercising its jurisdiction:

> The legal principles invoked to determine the issues raised in this case are summarized in *Kansas City Southern Railway Company v. Great Lakes Carbon Corporation*, 624 F.2d 822 (8th Cir.1980), cert. denied 449 U.S. 955, 101 S.Ct.

---

[12] This appeal arises from a civil case which was filed separately from the probate proceedings. Appellants explain that they attempted to file their claims in the probate case, but the clerk of district court set up a separate file. Probate proceedings are separate and distinct from actions in law and equity. *Russell v. Sullivan*, 2012 WY 20, ¶ 14, 270 P.3d 677, 680 (Wyo. 2012). This case should have been part of the probate docket. However, the parties and the district court have addressed the issues without objection, and so we will reach the merits in order to avoid a ruling based on a highly formal distinction between types of cases heard in the same court and for reasons of judicial expediency.

363, 66 L.Ed.2d 220 (1980). The essence of that summary is that a judgment is void only when there has been a plain usurpation of power, or the extension of jurisdiction beyond the scope of the court's authority. That is to be distinguished from an error in the exercise of the jurisdiction of the court, which must be addressed by appeal rather than a motion under Rule 60(b). The competing policies are a disciplined observance of jurisdictional limits coupled with the need for finality of judgments. If the court concludes that the challenge is simply to an erroneous interpretation of the statutory grant of jurisdiction, then, in favor of the policy of certainty and finality, the judgment becomes final unless appealed.

*In the Interest of WM*, 778 P.2d 1106, 1110 (Wyo. 1989). Whether a court has exceeded its jurisdiction is a question of law, and we review de novo. *Rock*, ¶ 18, 301 P.3d at 1080.

[¶47] The district judge observed that the Big Horn County District Court had the power to enter a decree of distribution, and that there was therefore no usurpation of power sufficient to render the judgment void. We agree that the district court did in fact have the authority and duty to enter a decree of distribution, although it may have erred in doing so without a hearing or signed waivers. *See* § 2-7-813, *supra*. An example of an error depriving the district court of jurisdiction can be found in *Swain v. State*, 2009 WY 142, 220 P.3d 504 (Wyo. 2009). In that case, the district court held a defendant in indirect criminal contempt within the same criminal case in which he was originally charged, rather than in a separate criminal proceeding as the law requires. This Court therefore found the order of contempt null and void. *Id.* at ¶ 17, 220 P.3d at 509.

[¶48] Unlike the error in *Swain*, the claimed error in this case was at most just an error because the court had the power to enter the decree it did in the probate case. If an appeal had been filed, perhaps the decree of distribution could have been set aside. But erroneous or not, the district court sitting in probate had authority to enter the order, and it is not void for that reason. As we have observed, a Rule 60(b) motion is not a substitute for appeal of a judicial error. *In Re Kite Ranch, LLC v. Powell Family of Yakima, LLC*, 2008 WY 39, ¶ 18, 181 P.3d 920, 925 (Wyo. 2008) (quoting *Spomer v. Spomer*, 580 P.2d 1146, 1148-49 (Wyo. 1978)).

### *Due Process*

[¶49] Appellant argues that the failure of the district court to hold a hearing or have appropriate waivers was a fatal denial of due process, rendering the decree void.

15

> "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *In re KMO,* 2012 WY 99, ¶ 28, 280 P.3d 1203, 1213 (Wyo. 2012) (quoting *DH v. Wyo. Dep't of Family Servs.,* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003)). We review de novo.

*Walker v. Walker*, 2013 WY 132, ¶ 35, 311 P.3d 170, 177 (Wyo. 2013). We have also observed that the touchstones of due process are notice and an opportunity to be heard. *In re ARF*, 2013 WY 97, ¶ 28, 307 P.3d 852, 858 (Wyo. 2013) (citing *Pecha v. Smith, Keller & Associates*, 942 P.2d 387, 391 (Wyo. 1997)).

[¶50] As the district court pointed out, the only person complaining about the probate court's failure to hold the required hearing or to assure that there were adequate waivers is Appellant Susan Jubie, who claims her interest through Sara. Sara signed the petition for a decree of distribution, which indicated that receipts and waivers were attached, and that the matter could proceed to hearing without further notice. We do not know from this record whether Sara read the petition she signed, but we have held that those who sign documents without reading them do so at their peril. *Mendoza v. Gonzales*, 2009 WY 50, ¶ 10, 204 P.3d 995, 999 (Wyo. 2009) (beneficiaries who did not read disclaimer of interest in estate property bound by it); *Schmidt v. Killmer*, 2009 WY 23, ¶ 16, 201 P.3d 1121, 1126 (Wyo. 2009) (partners who did not read dissolution agreement bound by it); *Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979) (husband who failed to read prenuptial agreement is bound by it). "One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained." *Laird,* 597 P.2d at 467.

[¶51] We must therefore conclude that Sara had an opportunity for a hearing, but chose not to exercise it. She may have done so because of poor legal advice, but that does not render the judgment void.

[¶52] Appellants suggest that there is a difference between giving notice to a personal representative and giving notice to an individual, arguing that Sara therefore technically did not receive notice of the opportunity to be heard even though she signed the petition saying that a hearing was unnecessary. To so conclude would require us to adopt legal fictions as improbable as the fertile octogenarian and the unborn widow of post-feudal

property law.[13]  Although Sara had a dual role, she was one person with one brain, and she knew of the proposed distribution when she signed the petition.

[¶53]  It could be argued that Susan Jubie might have an independent right to complain of lack of notice.  However, Ms. Jubie signed a document which acknowledged that she had received all the money she was due under Kent's will from personal representative Sara, and that nothing else was due her from the estate.  The receipt was signed on March 17, 2006, about four months before the order approving the decree of distribution, because Sara made the distributions required by Kent's will before she was authorized to do so.  By the document she signed, Ms. Jubie indicated that she had no claim against the estate, which would have made an opportunity for hearing meaningless.

[¶54]  It is true that Kent's sons and heirs did not receive prior notice and that they therefore arguably had no opportunity to be heard before the order was entered.  They did not sign receipts as Ms. Jubie did.  However, they were mailed a copy of the decree and to this day have not objected to the distribution it directed.  Appellants do not have standing to assert a claimed violation of someone else's right to due process in order to set aside a decree as to which that person does not object.  *See, e.g., Owens v. State*, 2012 WY 14, ¶ 15, 269 P.3d 1093, 1097-98 (Wyo. 2012) (defendant could not assert a reasonable expectation of privacy in his friend's room); *In re RE*, 2011 WY 170, ¶ 23, 267 P.3d 1092, 1100 (Wyo. 2011) (mother could not rely on grandparents' rights in permanency hearing); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474, 102 S. Ct. 752, 760, 70 L.Ed.2d 700 (1982) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties" (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975))).  We find that neither Sara Dahlke nor Susan Jubie was improperly deprived of an opportunity for due process.

### *Advisement as to Elective Share*

[¶55]  Appellants argue that the decree was void because Sara was never advised of her statutory right to take an elective share against Kent's will.  Sara was not in fact given the advisement required by Wyo. Stat. Ann. § 2-5-104.  That statute provides as follows:

> (a) If the surviving spouse has a right of election under W.S. 2-5-101, then at any time after the filing of an inventory and not more than three (3) months after the admission of the will to probate, the court shall advise the surviving spouse of his right of election and shall explain fully the right and that in

---

[13] Robert J. Lynn, *The Modern Rule Against Perpetuities* 58-59 (1966) (concerning "The Decline and Fall of Fantastic Possibilities").

the event of the failure to exercise the right of election the will shall govern and control the distribution of the estate

(b) If the surviving spouse dies or becomes incompetent before the court has advised him of his right of election and has not, prior to death or incompetency, filed a waiver or renunciation of the right of election, the court shall advise the personal representative or guardian of the estate of the deceased or incompetent surviving spouse of the right of election as provided in subsection (a) of this section.

Wyo. Stat. Ann. § 2-5-104 (LexisNexis 2013). Wyo. Stat. Ann. § 2-5-101 establishes entitlement to an elective share:

(a) If a married person domiciled in this state shall by will deprive the surviving spouse of more than the elective share, as hereafter set forth, of the property which is subject to disposition under the will, reduced by funeral and administration expenses, homestead allowance, family allowances and exemption, and enforceable claims, the surviving spouse has a right of election to take an elective share of that property as follows:
       (i) One-half (1/2) if there are no surviving issue of the decedent, or if the surviving spouse is also a parent of any of the surviving issue of the decedent; or
       (ii) One-fourth (1/4), if the surviving spouse is not the parent of any surviving issue of the decedent.

Finally, Wyo. Stat. Ann. § 2-5-105(a) sets time limits to exercise the right of election:

(a) The surviving spouse, or a personal representative or guardian of the estate of a deceased or incompetent surviving spouse, may elect to take his elective share in the estate by filing in the court and mailing or delivering to the personal representative, if any, a petition for the elective share within three (3) months after the admission of the will to probate or within thirty (30) days after being advised of the right of election, whichever limitation last expires. In the event of a failure to file a petition within the foregoing time limitation the will governs and controls the distribution of the estate.

Wyo. Stat. Ann. § 2-5-105(a) LexisNexis 2013).

[¶56] The district court determined that it was unnecessary for the district judge who sat on the probate of Kent's estate to provide the advisement with regard to the elective share, because Sara received more than 25% of the total value of the estate reflected in the inventory she signed. It construed §§ 2-5-101(a) and 104(a) as requiring advisement of a forced share only if Sara would have received less than 25% of Kent's probate estate under the will.

[¶57] We do not necessarily disagree with the district court's interpretation of the statutes, but we cannot agree that the record shows that Sara would have received more than 25% of the estate under the will if its provisions had been properly carried out. Assuming that the probate judge had no reason to know that the account held as joint tenants should perhaps not have been an asset of the estate, neither the will nor the decree of distribution transferred the residue of the estate to Sara as an individual. The residue was instead to pass to the marital trust. The trust provisions of Kent's will provided that Sara was to receive the income from the residue, and that the trustee (Sara) could invade principal only as necessary for health care needs, education, maintenance, and support. It also contemplated that whatever trust principal Sara did not use during her lifetime, less amounts for taxes and administration of her estate, would pass to Appellees Jay and Kurt Dahlke. It is therefore not at all clear on this record that Sara would have received more than 25% of the estate.[14]

[¶58] On the other hand, Sara did not transfer the remainder of the joint account to the marital trust, but instead used that money without funding the marital trust. She transferred the balance of the account to The Sara L. Dahlke Living Trust, of which Appellant Susan Jubie became the beneficiary after Sara's death. Sara therefore received the funds in the account and passed whatever was left of them through to her heir, although this was not Kent's intent as expressed in his will. Sara also participated as personal representative of the estate in Wyoming and in the ancillary probate in Oregon, and she was therefore a proponent of the will in both places.

[¶59] One could argue that Sara made an election in fact to take under the will by her conduct and her dealings with estate property. She would not have retained control of the assets she did if she had not acted as personal representative. *See* 5 William & Bowe & Douglas H. Parker, *Page on The Law of Wills* §§ 47.22, 47.39 (rev. 2005); *see also Owens v. Andrews*, 131 P. 1004 (N.M. 1913) ("An election to take, under a will, may be inferred or implied, from the conduct of the party, his acts, omissions, modes of dealing with the property, acceptance of rents and profits, and the like."). One court has observed "that if any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will." *Miller v. Miller*, 158 N.E.2d 674, 676

---

[14] The Wyoming inventory did not include Kent's Oregon properties, including the Barge Inn. These were valued at $586,036.00, less $12,350.00 for attorney fees and costs incurred by the Oregon attorneys handling the ancillary probate.

(Mass 1959) (citation omitted).  *See also In re Hartt's Estate*, 75 Wyo. at 346-48, 295 P.2d at 998-99, in which Chief Justice Blume held, *inter alia*, that when a widow was in a position to know the contents of her husband's will and the extent of his estate, made no effort to investigate her right to an elective share, and there was no fraud, she was not entitled to elect months after expiration of the statutory period, even if she was not properly advised of her right to do so.

[¶60]  The complaint in this case reflects that Ms. Jubie, acting as personal representative of Sara Dahlke's estate, was well aware of her mother's right to an elective share as of the date this case was filed in district court.  She cited §§ 2-5-101 and 104(a) in paragraph 27 of the complaint, which was filed on June 24, 2011, about two and a half years ago. Under §§ 2-5-104(b) and 105(a), *supra,* Ms. Jubie arguably had the right to take the elective share on her mother's behalf, but would have been able to do so only within three months of the admission of the will to probate (which had long passed), or within thirty days after advisement by the court of the right to an elective share, whichever came later.[15]  Ms. Jubie has been aware of the elective share for well over thirty days, and has not attempted to exercise it.  She complains instead that the joint account was improperly treated as an asset of the estate, that the probate should be reopened, and that the devisees and McColloch should be required to disgorge what they received from the joint account, which would then pass to her through Sara Dahlke's living trust.

[¶61]  We do not intend to suggest that advisement of the elective share under §§ 2-5-101 and 104 is unimportant.  However, in light of Sara Dahlke's acceptance of benefits under the will and Ms. Jubie's failure to attempt to exercise the elective share, we find as a matter of law that the omission of the advisement was not the sort of fundamental error which would cause the decree of distribution to exceed the probate court's jurisdiction. *In re Interest of WM*, 778 P.2d at 1110.

**Fraud on the Court and Relief Under W.R.C.P. 60(b)(6)**

[¶62]  Appellants argue that the Court should grant relief under Rule 60(b)(6), which allows a judgment to be set aside "for any other reason justifying relief from the operation of the judgment."  They contend that attorney McColloch's representation that the heirs had waived notice and hearing on the decree of final distribution was either a fraud upon the court or gross neglect constituting an exceptional circumstance requiring relief from judgment.  As noted above, we generally review the decision as to whether to

---

[15] In *In re Miller's Estate*, 541 P.2d 28, 31-32 (Wyo. 1975), this Court suggested in dicta that the right to take an elective share would continue until the statutory advisement was given under a now-repealed statute which was very similar to §§ 2-5-101, 104, and 105.  That case did not actually arise under the statute in effect at the time of the ruling, but under an earlier one, and it addressed the issues of whether exercising an elective share in another state processing a domiciliary probate was sufficient to invoke it in this state, and whether the right of election was merely personal under a version of the statute in effect in 1942.  It therefore offers us little guidance in this case.

20

grant relief under Rule 60(b) for an abuse of discretion, unless a judgment is void under subsection 4. *Vanasse*, 847 P.2d at 996.

[¶63] As a preliminary matter, Appellees contend that Appellants argue for the first time in this appeal that attorney McColloch engaged in fraud on the court, and that the argument should therefore not be considered, citing *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 942 (Wyo. 1981). It is true that we find no specific mention of this theory in Appellants' pleadings below.

[¶64] However, Appellants have argued from the outset that entry of the decree of distribution without waivers or a hearing was improper, and that the petition for a decree of distribution incorrectly claimed that the required waivers were attached. This is different from the newly raised argument in *ABC Builders*, which related to jury instructions to which there had been no objection at trial. *Id*. Although Appellants' theories appear to have evolved and expanded, or at least to have become more focused, we will consider their Rule 60(b)(6) argument.

[¶65] As noted above, we have held that a decree of distribution can generally be challenged only by appeal and not by a collateral attack unless the decree was the result of fraud. *Taylor v. Estate Taylor*, 719 P.2d 234, 238-39 (Wyo. 1986). Fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier [sic] or unfairly hampering the presentation of the opposing party's claim or defense." *Dollarhide v. Bancroft*, 2010 WY 126, ¶ 20, 239 P.3d 1168, 1175 (Wyo. 2010) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). We find that the undisputed facts in the record before us could not as a matter of law establish a fraud upon the court clearly and convincingly.

[¶66] Sara Dahlke signed the petition for distribution under oath. In it she represented that duly executed receipts and waivers were attached, and that the matter could proceed to hearing and entry of an order of distribution without further notice. Appellants must therefore argue that a misrepresentation made by or at least signed by Sara should entitle those who claim through her to relief from the decree based on that misrepresentation. This contention is untenable.

[¶67] Beyond that, it would hardly be an unprecedented event for a party to represent to a district judge that certain things had been attached to a pleading when in fact they had not been. The omission, whether accidental or deliberate, could have been readily detected by reviewing the pleading and/or the probate file, which attorneys and the public expect judges to do when they sign orders. It has been apparent to all who reviewed the Kent Dahlke estate probate file that there were no waivers. Given the ease with which

21

the omission could and should have been discovered, the record is as a matter of law insufficient to establish fraud on the court.

[¶68] Turning to the question of negligence on the part of counsel for the estate, a leading commentator notes that Federal Rule of Civil Procedure 60(b)(6), which is nearly identical to the Wyoming rule, has been described as "an unprecedented addition to the Rules." 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2864 (3d ed. 2012). It has been inconsistently applied due to its general nature. *Id*. The courts have held that a litigant attempting to rely upon subsection 6 must prove "exceptional circumstances" if the motion could have been brought under another subsection of the Rule, particularly if the motion could have been brought under subsections 1, 2, and 3 only within a year, and was not. *Id*. (There is no time limitation on subsection 6.) Motions under subsection 6 are addressed to the sound discretion of the district court. *Id*.

[¶69] Wright and Miller report that Rule 60(b)(6) has been relied upon to claim relief from judgment when there has been a mistake by counsel. Numerous courts have held that such claims fall within subsection 1 of Rule 60 (permitting relief only within one year for mistake, inadvertence, surprise, or excusable neglect under Wyoming Rule 60), and deny relief. *Id*. Some courts have nonetheless granted relief under Rule 60(b)(6) when there is gross neglect by counsel and an absence of neglect by his client, finding exceptional circumstances. *Id*.

[¶70] We have had occasion to consider whether an error by counsel might justify setting aside a judgment under Rule 60(b)(6). In *Hochhalter v. Great Western Enterprises, Inc.*, 708 P.2d 666 (Wyo. 1985), appellants retained Colorado counsel to defend them in a collection action. The attorney assured them that he was actively and aggressively defending them, but instead never answered Great Western's complaint. A default judgment was entered. The district court denied a motion to set the default judgment aside, and this Court affirmed. In discussing Rule 60(b)(6) grounds for setting the default judgment aside, we observed that proof that an attorney suffered personal or psychological disorders might be a basis for relief, but found no evidence of that in the record. *Id*. at 669.

[¶71] The Court also considered whether the Hochhalters' attorney was grossly negligent, and if so, whether that would permit relief under Rule 60(b)(6):

> Some courts have held that gross negligence by counsel constitutes a special circumstance and have accordingly granted relief under Rule 60(b)(6). *Jackson v. Beech*, 205 A.D.C. 84, 636 F.2d 831 (D.C.Cir. 1980); *L.P. Steuart, Inc. v. Matthews*, 117 A.D.C. 279, 329 F.2d 234 (D.C.Cir. 1964), cert. denied 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed. 35 (1964). Other courts have refused to grant relief

under Rule 60(b)(6) due to counsel's gross negligence. *Schwarz v. United States*, 384 F.2d 833 (2nd Cir. 1967). Professor Moore disagrees with the courts who have granted relief due to the attorney's "gross" negligence:

> " * * * To hold, however, that as a general proposition the litigant is not responsible for his attorney's conduct of the case would be destructive of the entire pattern of sanctions set forth in the Rules, and of course in the teeth of the decision in *Link* [infra]." 7 Moore Federal Practice ¶ 60.27[2] n. 45.

Professor Moore observes that the Supreme Court in *Link v. Wabash Railroad Company*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734, *reh. denied* 71 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962), made it plain that the neglect of the attorney is to be treated as the neglect of the party.

In *Link v. Wabash Railroad Company*, Justice Harlan stated:

> "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' [Citation.]" 370 U.S. at 633-634, 82 S.Ct. at 1390.

Although the question of the granting of relief under Rule 60(b)(6) was not directly before the court in *Link*, we find the above statement to be applicable to Rule 60(b)(6) cases as well. We hold that a litigant is not necessarily entitled to relief under Rule 60(b)(6) solely because his counsel was grossly negligent. To hold otherwise would be inconsistent with holding each party "bound by the acts of his lawyer-agent." In view of this holding and the failure of

23

> appellants to produce sufficient evidence as to attorney Grossenbach's alleged personal problems or psychological disorders, we hold that the trial court did not abuse its discretion in refusing to grant relief under Rule 60(b).

*Hochhalter*, 708 P.2d at 669-70.

[¶72] We likewise find no abuse of discretion in denying relief under W.R.C.P. 60(b)(6) on the undisputed facts of this case.

**Laches**

[¶73] The district court held that Appellants' claim for equitable relief was barred by laches because of the delay in bringing it. The discussion of laches below was evidently triggered by Appellants' claim that the court had general equitable authority to set aside a judgment in the interest of fairness.

[¶74] Appellants rely on a United States Supreme Court case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248, 64 S. Ct 997, 88 L.Ed. 1250 (1944), noting that equity has permitted relief to correct certain injustices beyond that permitted by court rules. That case involved a practice whereby a federal appellate court could allow a bill of review to allow the district court to reexamine a judgment already affirmed on appeal after a mandate had issued. Without the writ, the federal district court would have been powerless to deviate from the appellate mandate under the procedural rules in place at the time. *Id*. This unique procedure did not survive the adoption of the Federal Rules of Appellate Procedure.[16] The case does not therefore stand for the proposition that the courts have general authority to set aside judgments on equitable grounds.

[¶75] On the other hand, the Wyoming legislature adopted Wyo. Stat. Ann. § 1-16-401, which allows district courts to vacate their own judgments and orders on specific grounds:

> (a) A district court may vacate or modify its own judgment or order after the term at which it was made:
>
> . . .
>
> (iii) For mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order;

---

[16] Bills of review are abolished by both F.R.C.P. 60(e) and W.R.C.P. 60(b).

> (iv) For fraud practiced by the successful party in obtaining a judgment or order[.]

Wyo. Stat. Ann. § 1-16-401(a) (LexisNexis 2013).

[¶76] It is arguable that the quoted language might apply here, but the legislature also required proceedings to vacate or modify a judgment or order under these subsections to be commenced within two years after the judgment or order was made, unless the person aggrieved was a minor or of unsound mind. Wyo. Stat. Ann. § 1-16-408 (LexisNexis 2013). We can think of no basis to find a generalized equitable right to overturn a judgment in the face of a specific statute and court rule governing this kind of relief. We therefore find it unnecessary to address the equitable defense of laches.

**Availability of Other Possible Remedies**

[¶77] The district court observed that this is really a malpractice case brought by necessity as a claim for equitable relief, and it acknowledged that attorney McColloch arguably gave Sara bad advice in her role as the personal representative of Kent's estate. It noted the difficulty with a malpractice claim when McColloch represented the estate and not Sara as an individual.

[¶78] Appellants argue that the possibility of a malpractice claim does not preclude the claims made in this case. We agree, and we believe the district court did as well. We perceive the district court's statement to be an observation concerning the reason the case was filed. The actual basis for the court's ruling was thoroughly explained in its decision letter. No reversible error resulted from making the observation.

## CONCLUSION

[¶79] Our system of justice is generally adversarial in nature, and procedural errors tend to be soon discovered due to the parties' enlightened self-interests. Probate administration, on the other hand, is often not adversarial, and the probate court therefore has a significant role in assuring that the decedent's intent or the requirements of our statute of descent and distribution are carried out efficiently, honestly, and with appropriate notice. It is difficult for a judge to anticipate unfairness or detect procedural errors when no one complains about a proposed action. The probate process went awry in this case, but the law governing finality of judgments requires that the decree of distribution stand. We therefore affirm the district court's summary judgment in favor of Appellees.