# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 77

### APRIL TERM, A.D. 2021

### June 17, 2021

IN THE INTEREST OF: FP, SP, TP
and XP, minor children,

CP,

Appellant
(Respondent),

v.

EMC III and DC,                                   S-20-0224

Appellees
(Respondents),

and

THE STATE OF WYOMING,

Appellee
(Petitioner).

*Appeal from the District Court of Natrona County*
The Honorable Catherine E. Wilking, Judge

*Representing Appellant:*
>    Hampton M. Young, Jr., Casper, Wyoming.

*Representing Appellees:*
>    Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney
>    General; Jill E. Kucera, Senior Assistant Attorney General; Allison E. Connell,
>    Assistant Attorney General; Stacy E. Casper, Casper, Wyoming.

*Representing Guardian ad Litem:*
> Joseph Raymond Belcher, Cheyenne, Wyoming; Kim A. Skoutary Johnson, Wyoming Guardian ad Litem Program.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    CP (Mother) appeals from the juvenile court's order dismissing the juvenile case because permanency had been achieved for her children through reunification with their fathers.  The State argues we lack jurisdiction over this appeal.  We conclude we have jurisdiction and summarily affirm the dismissal order because Mother's opening brief misstates the record and fails to comply with the Wyoming Rules of Appellate Procedure (W.R.A.P.).

## FACTS

[¶2]    Mother has six children.  NP and RP are adults.  SP, FP, TP, and XP are minors, born in 2004, 2006, 2011, and 2013, respectively.  FP's father, EMC, lives in Maryland; TP and XP's father, DC, lives in North Carolina.  We will refer to EMC and DC collectively as "the fathers."

[¶3]    On January 15, 2019, law enforcement officers responded to Mother's home after RP reported Mother had cut him with a knife.  The officers arrested Mother and took SP, FP, TP, and XP into protective custody due to the domestic violence incident and the unsanitary conditions of the home, including a bathroom floor covered in toilet paper containing human feces.  The next day, the district attorney filed a neglect petition against Mother, and the juvenile court held a shelter care hearing.  The court ordered the children be placed in the temporary legal and physical custody of the Department of Family Services (DFS).  Two weeks later, the juvenile court held Mother's initial hearing, where she denied neglecting the children.  The court again ordered the children to remain in DFS custody. DFS placed the children in non-relative foster care.

[¶4]    DFS created case plans for Mother and the fathers and recommended the permanency plan be reunification of the children with a parent.  The Multi-Disciplinary Team (MDT) agreed with DFS's recommendation, but Mother did not.  She believed the permanency plan should be reunification of the children with her.  The juvenile court held a disposition hearing on March 20, 2019.  Mother stipulated to the allegations contained in the neglect petition, and the court adjudicated the minors neglected by Mother.  The court decided "the permanency plan is reunification of the minor children with a parent upon successful completion of the [case plans]."

[¶5]    The States of Maryland and North Carolina completed home studies on the fathers' homes and approved them for FP, TP, and XP's placement.  In June 2019, FP went to live with EMC for the summer, and TP and XP went to live with DC for the summer.  SP remained in foster care in Wyoming.  While staying with his father, FP disclosed to his therapist new allegations of abuse by Mother, including hitting him and his siblings with a spoon, hitting and kicking them in the head, bashing his head into a brick wall, and throwing a knife at him.  He also alleged she punished him and his siblings by requiring

1

them to stand in a "T" pose for an extended period of time, making them stand outside in the cold, withholding food, and forcing them to stay awake "all night and all morning." These disclosures were reported to DFS, which opened an investigation and alerted law enforcement.

[¶6] In July 2019, the juvenile court held a six-month review hearing. It found SP, FP, TP, and XP were "doing very, very well in their current placements," seemed to "have enjoyed stability and a much less stressful environment," and were receiving counseling services "that seem to be of significant benefit to them." The court also found DFS was "making reasonable efforts to effectuate the permanency plan"; the parents' case plans were "more than appropriate"; the fathers were compliant with their case plans; and Mother was not compliant with her case plan but instead was "combative." It ordered the children to remain in the temporary legal and physical custody of DFS and continued the permanency plan of reunification of the children with a parent.

[¶7] Later that month, the fathers requested a court order allowing their respective children to live with them through the remainder of the juvenile case. The children's guardian ad litem (GAL) agreed with the motion, stating FP, TP, and XP had all expressed their desire to remain with their fathers and it was in their best interests to do so. Mother moved for immediate return of the children to Wyoming.

[¶8] After a hearing, the juvenile court granted the fathers' motion and denied Mother's motion for immediate return of the children. It found FP, TP, and XP had been in their fathers' care since June 2019, and they had "made tremendous strides in their physical and mental health while in said care." It also noted the new allegations of abuse, which were being investigated; the children had expressed their desire to remain in their fathers' care; the fathers had established stable, supportive, caring, and healthy homes for them; and their placement with their fathers was consistent with the permanency plan of reunification with a parent.

[¶9] On March 12, 2020, the juvenile court held a permanency hearing. The court dismissed SP from the juvenile case because permanency had been achieved through his reunification with Mother. It found the other children had mental health needs but found those needs were being addressed in their current placements with their fathers. The court also found their current placements were necessary and appropriate and reasonable efforts to reunify the family were being made.

[¶10] In May and June 2020, the district court, in separate civil actions, granted the fathers temporary custody of their children. Shortly thereafter, the fathers moved for discharge of FP, TP, and XP from the juvenile court action. The GAL joined in the motion, arguing the purpose of the juvenile matter—reunification of the children with a parent—had been achieved through the children's placement with their fathers and it was in the children's

best interests to dismiss the juvenile case. DFS and the MDT also recommended the case be dismissed. Only Mother opposed dismissal.

[¶11] After a hearing, the juvenile court granted the fathers' motion and dismissed the juvenile case. It decided the permanency goal of reunification with a parent had been achieved through the children's placement with their fathers and found the children were "thriving living with their fathers" and it was in their best interests to dismiss the case. *See* Wyo. Stat. Ann. § 14-3-431(a) (LexisNexis 2019) ("An order of disposition shall remain in force for an indefinite period until terminated by the court whenever it appears the purpose of the order has been achieved and it is in the child's best interest that he be discharged from further court jurisdiction."). It also found significant that in separate civil actions the district court had awarded temporary custody of the children to the fathers and the children had expressed to the GAL their desire for the juvenile case to be dismissed. Mother appealed.

## DISCUSSION

### *Jurisdiction*

[¶12] In her notice of appeal, Mother listed twelve orders from which she was appealing. The State contends we are without jurisdiction over Mother's appeal because the orders being appealed are either not appealable under W.R.A.P. 1.05 or were not appealed within 30 days as required by W.R.A.P. 2.01.

[¶13] The Child Protection Act governing abuse/neglect proceedings provides: "Any party including the state may appeal any final order, judgment or decree of the juvenile court to the supreme court within the time and in the manner provided by the Wyoming Rules of Appellate Procedure." Wyo. Stat. Ann. § 14-3-432(a) (LexisNexis 2019). W.R.A.P. 2.01 states: "An appeal from a trial court to an appellate court shall be taken by filing the notice of appeal with the clerk of the trial court within 30 days from entry of the appealable order[.]" "The timely filing of a notice of appeal is mandatory and jurisdictional." *Golden v. Guion*, 2016 WY 54, ¶ 11, 375 P.3d 719, 722 (Wyo. 2016) (citing W.R.A.P. 1.03)). Relevant here, W.R.A.P. 1.05 defines "appealable order" as

> (a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment; or
> (b) An order affecting a substantial right made in a special proceeding[.]

Rule 1.05(a), (b).

3

[¶14]   "Proceedings in juvenile court are special proceedings[.]"  *DH v. Wyo. Dep't of Family Servs. (In re "H" Children)*, 2003 WY 155, ¶ 61, 79 P.3d 997, 1014 (Wyo. 2003). Adjudication and disposition orders affect a parent's substantial rights.  *Id.*  Similarly, "a parent's substantial rights are affected when the permanency plan is changed from reunification to termination and adoption."  *KC v. State*, 2015 WY 73, ¶ 33, 351 P.3d 236, 245 (Wyo. 2015) (citing *In re HP*, 2004 WY 82, 93 P.3d 982 (Wyo. 2004)).

[¶15]   Although listed in her notice of appeal, Mother fails to raise any arguments with respect to seven orders:  (1) Order Following Shelter Care Hearing; (2) Order Following Initial Hearing; (3) Order Excusing FP, TP, and XP from the Permanency Hearing; (4) Order Regarding Placement and Mother's Counselor; (5) Order Regarding Denying Motion to Remove Ms. Hicks from the MDT; (6) Order Denying Mother's Motion to Recuse Judge; and (7) Order Granting DFS's Motion to Quash Subpoena Duces Tecum. As a result, we need not address the appealability of these orders.

[¶16]   Mother challenges the juvenile court's findings relating to DFS's investigation of FP's allegations of abuse and its reasonable efforts to reunify the children with her.  The court made one or both findings in four orders:   (1) Order Following Stipulation/Disposition Hearing; (2) Order Following Motion Hearing/Six Month Review Hearing; (3) Order Regarding Placement; and (4) Order Following Permanency/Motion Hearing.  Those findings, however, did not affect Mother's substantial rights because they did not constitute or have the effect of an adjudication or disposition, nor did they serve as a basis for changing the permanency plan from reunification to termination and adoption. Rather, they were interlocutory findings pending further action by DFS and/or the parents. As we explained in *KC*, such findings do not impact a parent's substantial rights:

> Not all review hearings have the same impact [on a parent's substantial rights].  *At one end of the spectrum, a review hearing at which an ongoing permanency plan is reviewed and continued pending some required action by the parents will have relatively minor impact on the parties.* At the other end of the spectrum, a permanency hearing in which a court changes the permanency plan from reunification to termination of parental rights has significant impacts, not only on parents, but on children as well.

*KC*, ¶ 34 , 351 P.3d at 245 (emphasis added).

[¶17]   Because the juvenile court's interlocutory findings concerning DFS's investigation and reasonable efforts did not affect Mother's substantial rights, they are not "appealable order[s]" under W.R.A.P. 1.05.  However, that simply means Mother did not need to appeal from them within 30 days of their issuance under W.R.A.P. 2.01 (requiring notice of appeal to be filed "within 30 days from entry of the *appealable order*") (emphasis added).  Indeed,

4

had Mother immediately appealed, we would have dismissed for want of an appealable order. The fact these interlocutory findings were not immediately appealable does not mean they are never reviewable. They are reviewable in an appeal from a final, appealable order. *Kruckenberg v. Ding Masters, Inc.*, 2008 WY 40, ¶ 11, 180 P.3d 895, 899 (Wyo. 2008) ("Generally, interlocutory orders merge into the final order . . . . '[A] notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders.'" (citing *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 820 (Wyo. 1994), and quoting 16A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3949.4, at 72 (1999)); *Geerts v. Jacobsen*, 2004 WY 148, ¶ 13, 100 P.3d 1265, 1269 (Wyo. 2004) ("The general rule is that all provisional or interlocutory proceedings in a matter are merged in, and disposed of, by the final decree.") (citing *Hinrichs v. Office of Family & Children of Allen Cnty.*, 798 N.E.2d 867, 872 (Ind. App. 2003)).

[¶18] That leads us to the "Order to Dismiss Jurisdiction of the Court and Close File," which dismissed the juvenile case. The State concedes Mother's notice of appeal was timely with respect to this order. It nevertheless claims the order is not an "appealable order" under Rule 1.05 because it did not affect Mother's substantial rights. We see it differently.

[¶19] "[A]n appealable order under Rule 1.05(a) has 'three necessary characteristics. . . . It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues." *See Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 29, 479 P.3d 1222, 1231 (Wyo. 2021) (quoting *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 31, 319 P.3d 116, 124 (Wyo. 2014)) (other citation omitted). *See also, Pub. Serv. Comm'n v. Lower Valley Power & Light, Inc.,* 608 P.2d 660, 661 (Wyo. 1980) ("Generally a judgment or order which determines the merits of the controversy and leaves nothing for future consideration is final and appealable, and it is not appealable unless it does those things.") (citation omitted). The order dismissing the juvenile case satisfies all three requirements. It affected Mother's substantial rights because it halted any efforts to reunify the children with her and determined permanency had been achieved through placement of the children with their fathers. *See HP*, ¶ 23, 93 P.3d at 989 ("[T]he order certainly affects Mother's substantial rights as it has the effect of halting reunification attempts. Therefore, we will treat it as an appealable order."). The order also determined the merits of the controversy and resolved all outstanding issues by declaring permanency had been achieved, discharging the children from the case, and closing the case file.

[¶20] We have jurisdiction over this appeal.

***Mother's Appeal***

5

[¶21]  Mother complains DFS used the "children's allegations of abuse" to "drop[] the existing family plan for reunification with the mother to the concurrent plan of reunification with the father[s]" even though DFS did not adequately investigate the allegations, she was never charged for her actions, and she was not allowed to defend against the allegations in violation of due process.  According to her, "this was a case based solely on dirty house neglect, which morphed into unsuccessfully attempting to compel [her] into admitting allegations she asserted were false."  She also questions DFS's motives because it allowed SP to be reunified with her but decided it was not safe for her to be reunified with FP, TP, and XP.  Mother further complains DFS did not use reasonable efforts to reunify the children with her.

[¶22]  Mother's arguments misstate the record.  It was FP alone, not all the children, who made the new allegations of abuse.  Although Mother advocated for a permanency plan of reunification of the children with her and for a concurrent plan of reunification with the fathers, the juvenile court never adopted her position—there simply never was a permanency plan of reunification with Mother only.  Rather, the court ordered the permanency plan to be reunification of the children <u>with a parent</u>.  This permanency plan was never "dropped"; it remained the permanency plan from the juvenile case's inception to its dismissal.  Moreover, although DFS stated it would "explore all possible maternal and paternal relatives for a concurrent plan," the court never adopted a concurrent plan.  Finally, this case was not based solely on Mother's house being dirty.  It arose from the unsanitary conditions of Mother's home <u>and</u> the children witnessing domestic violence between RP and Mother.

[¶23]  Mother's brief also fails to comply with our rules of appellate procedure.  It wholly fails to make a statement of the case as required by W.R.A.P. 7.01(f), but instead states "Appellee [sic] waives a Statement of the Case."  An appellant does not have the option of "waiving" required elements of a brief.  By "waiving" the statement of the case, Mother fails to identify the nature of the case and put the issues in context.  Mother's brief also does not comply with W.R.A.P. 7.01(f) because it neglects to provide record cites for many of the stated facts.  Further, Mother's arguments are not cogent or supported by pertinent case law and citations to the record as required by W.R.A.P. 7.01(g).  The essence of Mother's arguments is that the juvenile case was about her, rather than about her children's well-being and their need for permanency.  Without providing any pertinent case law or statutory citation, Mother asserts she has some right to be rehabilitated at public expense, even though the children have been permanently placed in a safe and nurturing environment with a parent, and even though she at times resisted DFS efforts to assist her.  She is incorrect.  The relevant statutes are named the Child Protection Act, not the Parental Rehabilitation Act.  Furthermore, Mother's various arguments ignore that she still has all her parental rights, and that custody of her children is subject to separate civil cases.

[¶24]  "The failure to comply with any . . . rule of appellate procedure [other than the failure to timely file a notice of appeal] . . . does not affect the validity of the appeal, but is

6

ground only for such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions . . . and affirmance." W.R.A.P. 1.03(a). Mother's misstatement of the record and her failure to comply with our appellate rules, including her failure to provide cogent argument, warrant summary affirmance. *See Corrigan v. Vig*, 2020 WY 148, ¶ 7, 477 P.3d 87, 89 (Wyo. 2020) ("Mr. Corrigan's failure to comply with our appellate rules and to provide cogent argument renders summary affirmance appropriate."); *In Int. of BFW*, 2017 WY 64, ¶ 5, 395 P.3d 184, 185 (Wyo. 2017) ("The longstanding rule of this Court is to summarily affirm 'cases or issues in cases that are not presented with cogent argument or pertinent authority.'" (quoting *Hamburg v. Heilbrun*, 891 P.2d 85, 87 (Wyo. 1995))) (other citations omitted).

## CONCLUSION

[¶25] We have jurisdiction over Mother's appeal from the juvenile court's dismissal order. We summarily affirm that order because Mother's brief misstates the record and fails to comply with the rules of appellate procedure.