# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 85

**APRIL TERM, A.D. 2025**

**July 30, 2025**

ROLLY REDLAND and ROALENE
McCARTHY, individually and as
beneficiaries of the Robert and Irene
Redland Family Trust dated August 10,
1989,

Appellants
(Plaintiffs),

v.                                                              S-24-0176

LISA KIMSEY and MIKE KIMSEY,

Appellees
(Defendants).

---

*Appeal from the District Court of Big Horn County*
*The Honorable Edward A. Buchanan, Judge*

**Representing Appellants:**
> Earl Landers Vickery, Vickery & Shepherd, LLP, Houston, TX, and Erik Oblasser,
> Corthell and King Law Office, P.C., Laramie, Wyoming. Argument by Mr. Vickery
> and Mr. Oblasser.

**Representing Appellees:**
> Marshall E. Keller, Keller Law Firm, PC, Thermopolis, Wyoming. Argument by
> Mr. Keller.

**Before BOOMGAARDEN, C.J., and FOX,\* GRAY, FENN, and JAROSH, JJ.**

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of
the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on
this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    This is the third appeal stemming from Robert Redland's (Robert) failure to place certain ranch property in a family trust.[1]  The question presented is whether our decision in the 2015 Redland appeal, *Redland v. Redland*, 2015 WY 31, 346 P.3d 857 (Wyo. 2015) (*Redland II*), required an 11-acre parcel that Robert sold to his youngest daughter and her husband to be placed in the family trust.  The district court concluded *Redland II* did not address the 11-acre parcel and issued judgment exempting it from the other property required to be transferred to the family trust.  Two of Robert's five children (collectively the Redland Children) appealed.[2]  We affirm.

### ISSUES

[¶2]        1.    Do we have jurisdiction over this appeal?

            2.    Did the district court abuse its discretion or otherwise err when it denied the Redland Children's motions asking that the 11-acre parcel be transferred to the family trust?

            3.    Did the district court abuse its discretion when it denied the Redland Children's motion to supplement their complaint to add a claim for the 11-acre parcel to be transferred to the trust?

            4.    Did the district court abuse its discretion when it denied the Redland Children's requests for their attorney fees and costs?

### FACTS

[¶3]    Our previous decisions in this matter provide a detailed recitation of the facts. *Redland II*, ¶¶ 4–14, 346 P.3d at 860–65; *Redland v. Redland*, 2012 WY 148, ¶¶ 8–46, 288 P.3d 1173, 1178–85 (Wyo. 2012) (*Redland I*).  Here, we provide only those facts necessary to place the issues presented in this appeal in context and to resolve them.

---

[1] Because many of the parties in this case have the same surname, we will refer to them by their first names.
[2] Robert Redland had five children, Lisa Kimsey, one of the Appellees in this appeal, and four other children.  The four other children have participated in the underlying litigation and previous appeals as adverse parties to Robert Redland, Lisa Kimsey, and her husband Mike Kimsey.  Only two of the other four children (Rolly Redland and Roalene McCarthy) appealed here.  Resolution of this appeal requires us to review the parties' litigation history.  We refer to Rolly Redland and Roalene McCarthy and also to all four children as the Redland Children.

## A.        History of the Ranch Property and the Family Trust

[¶4]    Throughout their lives, Robert's parents, Richard and Nellie Redland, accumulated ranching property in the Big Horn Basin, including deeded land, state leases, and federal leases. Sometime between 1959 and 1962, Robert and his wife, Irene, purchased a property known as the Manderson Place from Richard and Nellie. Robert and Irene raised their five children—Rolly, Kendrick, Roalene, Teresa, and Lisa—on the Manderson Place while running sheep on other land (Original Mountain Land) owned by Richard and Nellie.

[¶5]    In 1971, Robert and Irene purchased additional property (the Woody Place) from Richard and Nellie. That same year, Richard died, and Rolly left college to live on and work the Woody Place. Two years later, Richard's estate transferred the state lease associated with the Woody Place to Robert and Irene. Kendrick became a full-time rancher in 1973. He lived on the Manderson Place but conducted his ranching operation on both the Manderson Place and the Original Mountain Land. Beginning in 1973, Robert, Rolly, and Kendrick ran integrated ranching operations using the Manderson Place, the Woody Place, and the Original Mountain Land, along with the state and federal leases associated with these properties.

[¶6]    After Nellie died, Robert, Irene, and their five children executed a trust agreement dated August 10, 1989, creating the Robert and Irene Redland Family Trust (family trust or trust). The purpose of the trust was to hold and manage the family's ranch properties and to acquire other property from Richard's estate. Robert, Irene, and the five children were the beneficial owners, and Robert and Irene were the trustees. Prior to the execution of the trust, Robert told his children that if they agreed to the trust, signed the trust agreement, and contributed money to the trust, all of the ranch property previously acquired from Richard and Nellie and all of the property to be acquired from Richard's estate, including the Manderson Place, the Woody Place, and the Original Mountain Land, along with all state and federal leases associated with these properties, would be placed in the family trust. Robert did clarify that he and Irene wanted use of the Manderson Place during their lifetimes, so it would not be placed in the trust until after their deaths. The five children signed the trust agreement and gave Robert money to purchase the Original Mountain Land along with its associated state and federal leases from Richard's estate.[3] Between 1991 and 1992, the children contributed more money to allow the trust to purchase land (Additional Mountain Land) and a state lease from Robert's brother's estate. Over the next 15 years, Rolly and Kendrick, operating on their belief that the Manderson Place, the Woody Place, the Original Mountain Land, the Additional Mountain Land, the state

---

[3] In his will, Richard left Nellie a life estate in his properties and, to his two sons, he left an option to purchase the Original Mountain Land, which included two federal leases and a state lease. The option to purchase could not be exercised until after Nellie's death. Robert purchased his brother's option, and upon Nellie's death, the family trust purchased the Original Mountain Land and the federal leases, but the state lease was conveyed to Robert.

leases, and the federal leases had been placed in the trust, invested considerable capital and labor in the ranch properties.

[¶7]    On February 14, 2007, Robert and Irene (through separate individual trusts) sold an 11-acre parcel (11 acres) that was part of the Manderson Place to their daughter Lisa and her husband, Mike Kimsey (collectively the Kimseys), for a homesite.[4]  A week later, the Redland Children learned of the sale from a notice in the local newspaper.  This caused them to commission a title search, which revealed that the state leases, one federal lease, and the Manderson Place (collectively the disputed property) had never been placed in the family trust.  The search showed that the Manderson Place, except for the 11 acres sold to the Kimseys, was owned by Robert's and Irene's individual trusts.

[¶8]    Irene died in September 2007.  Robert, then, sold his sheep to the Kimseys and, as trustee of the family trust, leased the trust's mountain property to the Kimseys for sheep grazing (grazing lease).  In November 2007, Rolly was elected to replace Irene as co-trustee.  The Redland Children demanded that Robert transfer the disputed property to the family trust.  He refused, and litigation ensued, marking the beginning of what is to date a 17-year legal controversy.

## B.    Complaint and First Rule 59(e) Order

[¶9]    In April 2008, the Redland Children sued Robert and the Kimseys.  Against Robert, the Redland Children alleged, *inter alia*, a claim for promissory estoppel and sought an order directing him to transfer the disputed property to the trust.  Against Robert and the Kimseys, they requested an order declaring the grazing lease between the family trust and the Kimseys void because Robert executed the lease without the approval of a second trustee.

[¶10]  The district court granted partial summary judgment on the promissory estoppel claim, concluding the claim was barred by the statute of limitations and the statute of frauds.  After a bench trial, the court held the grazing lease was void because it was executed without the approval of a second trustee as required by the family trust.  The Redland Children appealed the grant of summary judgment on their promissory estoppel claim.  We reversed and remanded, finding there were disputed questions of material fact as to whether the statute of limitations and the statute of frauds barred this claim.  *Redland I*, ¶ 181, 288 P.3d at 1214.

[¶11]  The district court held a second bench trial and issued a judgment (2013 Judgment). After determining the Redland Children's promissory estoppel claim was not barred by the statute of limitations or the statute of frauds, the court found the disputed property was integral to the family ranching operation and was intended to be placed in the family trust

---

[4] The deed states the parcel is "11.8 acres of land, more or less."  We will refer to it as 11 acres.

consistent with the oral promises Robert made to the Redland Children between 1989 and 1992. It held Robert's failure to place the disputed property into the trust, with the exception of the Manderson Place, constituted a breach of those promises and "[i]njustice [could] only be avoided if [the disputed property is] placed immediately in the [f]amily [t]rust and administered consistent with the other . . . [t]rust assets[.]" The court ordered Robert to immediately transfer the state leases and the one federal lease to the trust. With respect to the Manderson Place and the 11 acres, the court ordered:

> (c)    The 11 plus acres transferred to Lisa and Mike Kimsey in 2007 . . . shall be transferred back to Robert Redland, and said parcel shall be conveyed fully to the [family trust].
>
> (d)    Upon the death of Robert Redland, the property known as the Manderson [Place] . . . shall be thereupon immediately transferred by deed to and in favor of the [family trust].

[¶12] The Kimseys filed a motion under W.R.C.P. 59(e) to alter or amend the 2013 Judgment by deleting the requirement that they reconvey the 11 acres to Robert for placement in the family trust (subparagraph (c)). They argued removal of the requirement was necessary because the Redland Children's complaint did not contain a cause of action against them for the return of the 11 acres, and there was no evidence justifying the court's order on the 11 acres. They maintained they had no notice that they could lose title to the 11 acres upon which they had built their home and no opportunity to present legal defenses. About two weeks later, Robert and the Kimseys appealed the 2013 Judgment.

[¶13] On March 31, 2014, the district court granted the Kimseys' Rule 59(e) motion (First Rule 59(e) Order). It decided reference to the 11 acres in subparagraph (c) of the 2013 Judgment was "inadvertent" and "should not have been contained therein" because neither the court nor the parties had notice that the Redland Children sought to set aside the sale of the 11 acres. The court found the references to the 11 acres in the first and second trials were limited to the question of when the Redland Children learned of their claims for purposes of determining whether the statute of limitations barred their claims. It amended the 2013 Judgment by deleting subparagraph (c). The Redland Children did not appeal the First Rule 59(e) Order.

## C.    *Redland II* and Second Rule 59(e) Order

[¶14] On February 26, 2015, we decided Robert's and the Kimseys' appeal of the 2013 Judgment in *Redland II*. We affirmed the district court's decision with respect to the statute of limitations. *Redland II*, ¶¶ 65, 69, 346 P.3d at 879–80. We also affirmed, with one exception, the order requiring Robert to immediately transfer the disputed property to the family trust. *Redland II*, ¶¶ 2, 68–69, 346 P.3d at 859–60, 880. We found it undisputed that the parties had agreed that (1) the Manderson Place would be the last property placed

in the trust, (2) the Manderson Place would not be placed in the trust until after Robert's and Irene's deaths, and (3) Robert and Irene would have the use of the Manderson Place during their lifetimes. *Redland II*, ¶ 67, 346 P.3d at 879–80. We concluded this agreement "appears in all respects to be an agreement that Robert and Irene would have a life estate in the Manderson Place[.]" *Redland II*, ¶ 67, 346 P.3d at 880. "To limit confusion and the potential for future disputes, we remand[ed] to the district court to modify its order concerning the disposition of the Manderson Place." *Redland II*, ¶ 68, 346 P.3d at 880. We directed the district court to require Robert to immediately transfer the Manderson Place to the family trust, "subject to a life estate in Robert Redland that shall terminate on his death." *Id.*

[¶15] The district court judge assigned to the case was appointed to the Wyoming Supreme Court in August 2015, but on remand, the Redland Children sent that judge a proposed judgment containing a requirement that Robert immediately transfer the Manderson Place to the family trust and a requirement that the Kimseys reconvey the 11 acres to Robert for placement in the family trust. They acknowledged that the First Rule 59(e) Order removed the 11 acre requirement from the 2013 Judgment, and there was no appeal of that removal but claimed "the terms of the Supreme Court decision and remand [in *Redland II*] appear to require that the [11 acres] be owned by the [t]rust." The judge returned the proposed judgment because he no longer had jurisdiction to review and sign the order. A retired judge temporarily assigned to the matter signed the proposed judgment (2015 Judgment).

[¶16] The Kimseys filed a motion to alter or amend the 2015 Judgment pursuant to, *inter alia*, Rule 59(e). As they had with the 2013 Judgment, they argued the requirement that they reconvey the 11 acres to Robert for placement in the family trust should be stricken from the judgment because the Redland Children did not state a claim against them for the 11 acres and there was no evidence introduced at the trials concerning the 11 acres. They also asserted that *Redland II* did not order them to convey the 11 acres to the family trust. The Kimseys appealed the 2015 Judgment, which we stayed pending the district court's resolution of their Rule 59(e) motion.

[¶17] The district court granted the Kimseys' motion (Second Rule 59(e) Order) and amended the 2015 Judgment to remove the requirement that the Kimseys reconvey the 11 acres to Robert for placement in the family trust. It concluded that requirement would deprive the Kimseys of due process because they were not on notice that they risked losing the 11 acres and did not have an opportunity to present a defense. The court found *Redland II* affirmed the 2013 Judgment in all respects, including the district court's subsequent modification of the judgment deleting the requirement that the Kimseys reconvey the 11 acres to Robert for placement in the trust. It interpreted *Redland II*'s remand as affecting only Robert's transfer of the Manderson Place to the trust. The Kimseys withdrew their appeal of the 2015 Judgment.

5

## D. The Redland Children's Motions and 2024 Judgment

[¶18]   The Redland Children did not appeal the Second Rule 59(e) Order.  Instead, over a year later, on June 12, 2017, they filed a motion pursuant to W.R.C.P. 60(a), W.R.C.P. 60(b)(6), and W.R.C.P. 15(d).  They argued *Redland II* required the entire Manderson Place, including the 11 acres, to be transferred to the family trust subject to a life estate in Robert.  In the alternative, they asked for leave to supplement their complaint by adding a claim for the 11 acres.

[¶19]   In June 2020, the district court issued a decision letter denying the Redland Children's motion.  It decided *Redland II* did not require the 11 acres to be conveyed to the family trust because the issue was not before the Supreme Court.[5]  The district court denied the Redland Children's motion to supplement their complaint.  It found the late filing of the motion was the result of inexcusable delay because the Redland Children had known since 2007 that the Kimseys owned the 11 acres; they failed to appeal or move to amend their complaint after the First Rule 59(e) Order deleted the requirement that the Kimseys reconvey the 11 acres to Robert for placement in the trust; they did not appeal the Second Rule 59(e) Order which removed that same requirement; and they waited a year and a half after the Second Rule 59(e) Order to file their Rule 15(d) motion.  The court asked Robert and the Kimseys to prepare an order consistent with the decision letter but, for reasons unknown, no order was prepared.

[¶20]   Robert died in July 2023.  In February 2024, the Redland Children filed a renewed motion for a judgment ordering the Kimseys to transfer the 11 acres to the family trust in conformity with *Redland I* and *Redland II*.  On March 27, 2024, the district court issued a judgment (2024 Judgment) incorporating its June 2020 decision letter in its entirety.  It concluded:

> For purposes of clarification, as previously held, issues surrounding the transfer of the [11 acres] owned by the [Kimseys] are not included in any final judgment in this matter. The exclusion of the [11 acres] from any final judgment stands and no amendment to the pleadings will be allowed.  [The Kimseys] are not required to transfer the [11 acres] under this litigation as it now stands.

The Redland Children appealed.

---

[5] The Redland Children claim in their briefs that the district court's decision letter found that *Redland II* was "ambiguous."  The record contradicts this claim.  The district court stated in its decision letter that *Redland II* "is *unambiguous*." (Emphasis added.)

## DISCUSSION

### I.      *Do we have jurisdiction over this appeal?*

[¶21]  The Kimseys argue the Redland Children's appeal should be dismissed for lack of jurisdiction.  They provide two reasons.

[¶22]  First, the Kimseys claim we lack jurisdiction because the Redland Children failed to appeal two prior appealable orders, the First and Second Rule 59(e) Orders, which removed the requirement from the 2013 and 2015 Judgments that the Kimseys reconvey the 11 acres to Robert for placement in the family trust.  They claim the failure to appeal these orders divests this Court of jurisdiction over this appeal, which seeks reversal of the district court's 2024 Judgment confirming the exemption of the 11 acres from being transferred to the trust.  The present appeal raises the denial of the Redland Children's motion under Rule 60(a), Rule 60(b)(6), and Rule 15(d), as well as their renewed motion for a judgment.  None of these motions challenge the First or Second Rule 59(e) Orders.  The failure to appeal the First or Second Rule 59(e) Order does not affect our jurisdiction over the issues raised in this appeal.

[¶23]  Second, the Kimseys argue we lack jurisdiction because the Redland Children's notice of appeal was filed more than 30 days after their Rule 60(a), Rule 60(b)(6), and Rule 15(d) motion was "deemed denied" under W.R.C.P. 6(c)(4).  "The timely filing of a notice of appeal is mandatory and jurisdictional." *Golden v. Guion*, 2016 WY 54, ¶ 11, 375 P.3d 719, 722 (Wyo. 2016) (citing W.R.A.P. 1.03).  Rule 6(c)(4) states:

> Any motion, under Rules 50(b) and (c)(2), 52(b), 59 and 60(b), not determined within 90 days after filing shall be deemed denied unless, within that period, the determination is continued by order of the court, which continuation may not exceed 60 days, at which time, if the motion has not been determined, it shall be deemed denied.

A notice of appeal not filed within 30 days after a motion affecting the finality of the judgment is "deemed denied" is untimely.  *Paxton Res., LLC v. Brannaman*, 2004 WY 93, ¶ 18, 95 P.3d 796, 802 (Wyo. 2004); *Andersen v. Hernandez*, 2005 WY 142, ¶ 18, 122 P.3d 950, 954 (Wyo. 2005) (*Paxton*'s rule applies to "post-trial motions that affect[] the finality of the judgment" (emphasis removed)).  *See also* W.R.A.P. 2.01(a) (a notice of appeal is timely if filed "with the clerk of the trial court within 30 days from entry of the appealable order").

[¶24]  Rule 60(a) and Rule 15(d) motions are not subject to the "deemed denied" rule because these rules are not referenced in Rule 6(c)(4).  *See Rosty v. Skaj*, 2012 WY 28, ¶ 15, 272 P.3d 947, 953 (Wyo. 2012) (W.R.C.P. 55(c) motion was not subject to "deemed

7

denied" rule because W.R.C.P. 55(c) is not cited in the rule); *Groskop as Tr. of Black Diamond Liquidating Litig. Tr. v. S&T Bank*, 2020 WY 113, ¶ 3, 471 P.3d 274, 277 n.2 (Wyo. 2020) ("W.R.C.P. 56 motions for summary judgment are not referenced in W.R.C.P. 6(c)(4)" and therefore there was no final judgment on the motions for summary judgment despite the district court not ruling on them within 90 days). Rule 6(c)(4) applies to Rule 60(b)(6) motions. The Redland Children's Rule 60(b)(6) motion was filed on June 12, 2017, and it was "deemed denied" 90 days later on September 10, 2017, when the district court failed to rule on it. Even so, this appeal is not untimely. The Redland Children would have had 30 days from September 10, 2017, in which to appeal the "deemed denial" of their Rule 60(b)(6) motion if the denial was an appealable order. The denial was not an appealable order because the Redland Children's Rule 60(a) and Rule 15(d) motions remained pending. *See* W.R.A.P. 1.05(a) (defining appealable order as "[a]n order affecting a substantial right in an action, when such order, in effect, *determines the action and prevents a judgment*" (emphasis added)); *Gaston v. Life Care Centers of Am., Inc.*, 2021 WY 74, ¶ 14, 488 P.3d 929, 935 (Wyo. 2021) ("Generally[,] a judgment or order which determines the merits of the controversy and *leaves nothing for future consideration* is final and appealable, and it is not appealable unless it does those things." (emphasis added) (quoting *Woods v. Woods*, 2001 WY 131, ¶ 8, 36 P.3d 1142, 1144 (Wyo. 2001))).

[¶25] The district court issued a decision letter in June 2020 denying the Redland Children's Rule 60(a), Rule 60(b)(6), and Rule 15(d) motion. The decision letter was not a final appealable order. *See* W.R.C.P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies. . . . A court's decision letter or opinion letter, made or entered in writing, is not a judgment."); *Broadhead v. Broadhead*, 737 P.2d 731, 733 (Wyo. 1987) ("The trial judge's decision letters, discussing legal principles and expressing his conclusions of law, did not constitute a judicial determination which may be considered a final order."). It was not until March 27, 2024, when the district court entered the 2024 Judgment adopting its June 2020 decision letter that there was a final appealable order. The earlier denial of the Rule 60(b)(6) motion merged into the 2024 Judgment and is reviewable on appeal of that judgment. *See In Int. of FP*, 2021 WY 77, ¶ 17, 488 P.3d 943, 947–48 (Wyo. 2021) ("The fact these interlocutory findings were not immediately appealable does not mean they are never reviewable. They are reviewable in an appeal from a final, appealable order." (citing *Kruckenberg v. Ding Masters, Inc.*, 2008 WY 40, ¶ 11, 180 P.3d 895, 899 (Wyo. 2008))). The Redland Children timely appealed the 2024 Judgment on April 25, 2024. We have jurisdiction over this appeal.

## II.     *Did the district court abuse its discretion or otherwise err when it denied the Redland Children's motions asking that the 11-acre parcel be transferred to the family trust?*

[¶26] The Redland Children argue the district court erred by denying their Rule 60(a) and Rule 60(b)(6) motion and their renewed motion for entry of judgment. They claim that because *Redland II* conclusively determined that Robert was legally bound to transfer <u>the</u>

8

entire Manderson Place to the family trust, subject to a life estate in Robert, the district court could not circumvent our mandate in *Redland II* by entering a judgment exempting 11 acres of the Manderson Place from being transferred to the family trust.[6]

[¶27] Under Rule 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." W.R.C.P. 60(a). "A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents the judgment as entered from accurately reflecting the judgment that was rendered." *Chesapeake Expl., LLC v. Morton Prod. Co., LLC*, 2025 WY 15, ¶ 59, 562 P.3d 1286, 1301 (Wyo. 2025) (quoting *Meckem v. Carter*, 2014 WY 52, ¶ 12, 323 P.3d 637, 643 (Wyo. 2014)). A court cannot under Rule 60(a) "substantively modify the original judgment; it can only make a judgment 'speak the truth' rather than 'say something other than what was originally pronounced.'" *Martorano v. Mazzel*, 2025 WY 53, ¶ 15, 568 P.3d 710, 714 (Wyo. 2025) (quoting *Stone v. Stone*, 2023 WY 21, ¶ 13, 525 P.3d 634, 637 (Wyo. 2023)). "[A]ny clarification that substantively alters the order violates the purpose of the rule," which is to ensure that the judgment reflects the contemporaneous intent of the court. *Chesapeake Expl.*, ¶¶ 30, 63, 562 P.3d at 1295, 1301 (citing *Snyder v. Snyder*, 2021 WY 101, ¶ 15, 495 P.3d 876, 879–80 (Wyo. 2021)). We review the denial of a Rule 60(a) motion de novo. *Stone*, ¶ 9, 525 P.3d at 637 (citing *Snyder*, ¶ 13, 495 P.3d at 879).

[¶28] Rule 60(b)(6) allows a court to relieve a party from a final judgment or order for "any other reason that justifies relief." W.R.C.P. 60(b)(6). The purpose of the rule "is to provide the courts with the means of relieving a party from the oppression of a final judgment . . . on a proper showing where such judgments are unfairly or mistakenly entered." *MSC v. MCG*, 2019 WY 59, ¶ 9, 442 P.3d 662, 665 (Wyo. 2019) (quoting *Kennedy v. Kennedy*, 483 P.2d 516, 518 (Wyo. 1971)). "A party seeking relief under Rule 60(b)(6) 'must show the existence of unusual circumstances that justify the extraordinary

---

[6] The Redland Children rely on res judicata to argue that, given our opinion and remand in *Redland II*, the district court was precluded from entering a judgment in this case exempting the 11 acres from being transferred to the trust. Res judicata does not apply as it bars a party from re-litigating a claim or cause of action that was or could have been raised in a prior case. *See Stevens v. Governing Body of Town of Saratoga*, 2025 WY 35, ¶ 35, 566 P.3d 166, 176 (Wyo. 2025) ("Res judicata . . . bars litigation of issues that were or could have been determined in a prior proceeding." (citing *Tozzi v. Moffett*, 2018 WY 133, ¶ 16, 430 P.3d 754, 759–60 (Wyo. 2018))); *In re Robert & Irene Redland Fam. Tr., Dated Aug. 10, 1989*, 2019 WY 17, ¶ 16, 435 P.3d 349, 356 (Wyo. 2019) ("Res judicata bars the relitigation of claims or causes of action that were or could have been raised in the prior litigation."). The issue they attempt to frame is more akin to the law of the case doctrine. *See Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667–68 (Wyo. 1993) ("Under the 'law of the case' doctrine, a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. . . . Most commonly, the 'law of the case' requires a trial court to adhere to its own prior rulings, *adhere to the rulings of an appellate court*, or adhere to another judge's rulings in the same case or a closely related case." (emphasis added) (citations omitted)). The law of the case doctrine does not apply because, as we state below, we did not address the 11 acres in *Redland II*.

9

relief requested.'" *Myers v. Myers*, 2022 WY 75, ¶ 25, 511 P.3d 470, 477 (Wyo. 2022) (quoting *Essex Holding, LLC v. Basic Props., Inc.*, 2018 WY 111, ¶ 72, 427 P.3d 708, 729 (Wyo. 2018)). We review the denial of a Rule 60(b)(6) motion for an abuse of discretion. *Olson v. Schriner*, 2020 WY 36, ¶ 15, 459 P.3d 453, 458 (Wyo. 2020). "An abuse of discretion occurs when the district court could not reasonably conclude as it did." *Stevens v. Governing Body of Town of Saratoga*, 2025 WY 35, ¶ 33, 566 P.3d 166, 175–76 (Wyo. 2025) (citing *In re Bd. of Cnty. Comm'rs, Sublette Cnty.*, 2001 WY 91, ¶ 10, 33 P.3d 107, 112 (Wyo. 2001)).

[¶29] The district court did not abuse its discretion or otherwise err by denying the Redland Children's Rule 60(a) and Rule 60(b)(6) motion and their renewed motion to enter judgment because *Redland II* did not require the 11 acres to be transferred to the family trust.

[¶30] In *Redland II*, Robert and the Kimseys raised only two issues. *Redland II*, ¶ 3, 346 P.3d at 860. They asserted the district court erred as a matter of law when it held (1) Robert made enforceable oral promises to place the disputed property in the family trust, and (2) the statute of limitations did not bar the Redland Children's claims seeking placement of the disputed property into the trust. *Id.* ¶¶ 3, 18–20, 346 P.3d at 860, 866. In the opinion, we outlined the facts, noting the Redland Children obtained a title search in 2007 after learning that property they believed was in the family trust had been transferred to the Kimseys. *Id.* ¶ 6, 346 P.3d at 862. We listed the properties that the title search revealed were in the family trust and those that were not in the trust. *Id.* ¶¶ 7–8, 346 P.3d at 862. We stated that the title search showed those properties that were not in the family trust were held by "the Robert Redland Revocable Trust and the Irene Redland Revocable Trust (*less the eleven plus acres that were deeded to Lisa and Mike Kimsey*)[.]" *Id.* ¶ 8, 346 P.3d at 862 (emphasis added). We quoted the 2013 Judgment, including the provisions where the district court ordered (1) the 11 acres transferred to the Kimseys in 2007 be reconveyed to Robert for placement in the family trust, and (2) the Manderson Place be immediately transferred to the trust upon Robert's death. *Id.* ¶ 13, 346 P.3d at 865. We then thoroughly analyzed the arguments raised by Robert and the Kimseys. *Id.* ¶¶ 50, 65, 346 P.3d at 873–74, 879. We rejected those arguments and "[a]s a final matter," addressed their argument that the district court erred by ordering the Manderson Place be placed in the family trust upon Robert's death because the order amounted to a judicially created will. *Id.* ¶¶ 50, 65–66, 346 P.3d at 873–74, 879. We disagreed with the substance of the argument but concluded the disposition of the Manderson Placed created "logistical difficulties." *Id.* ¶ 66, 346 P.3d at 879. We found it was undisputed

> that the parties agreed that the Manderson Place would be the last property placed in the [trust], it would not be placed in the [t]rust until after the deaths of both Irene and Robert Redland, and Irene and Robert Redland would have the use of the Manderson Place during their lifetimes.

10

*Id.* ¶ 67, 346 P.3d at 879–80. We determined this agreement "appears in all respects to be an agreement that Robert and Irene would have a life estate in the Manderson Place[.]" *Id.* ¶ 67, 346 P.3d at 880. "To limit confusion and the potential for future disputes, we remand[ed] to the district court to modify its order concerning the disposition of the Manderson Place" to "direct Robert Redland to immediately and forthwith execute any documents necessary to transfer the Manderson Place to the [family trust], subject to a life estate in Robert Redland that shall terminate on his death." *Id.* ¶ 68, 346 P.3d at 880. We affirmed the district court's order in all other respects. *Id.* ¶ 69, 346 P.3d at 880.

[¶31] *Redland II* did not expressly or implicitly address the 11 acres or require that they be transferred to the trust. We acknowledged the Kimseys' ownership of the 11 acres and the 2013 Judgment directing the Kimseys to reconvey the 11 acres to Robert for placement in the trust—nothing more. Our modification and remand pertained only to the provision in the 2013 Judgment directing the Manderson Place to be transferred to the trust upon Robert's death. *Redland II*, ¶ 66, 346 P.3d at 879. This provision did not address the 11 acres, which were the subject of a separate provision in the 2013 Judgment. The separate provision addressing the 11 acres was expressly deleted by the district court from the 2013 Judgment in the First Rule 59(e) Order. The First Rule 59(e) Order was part of the record on appeal in *Redland II*, but the Redland Children did not appeal it.

[¶32] Now, the Redland Children maintain that because the description of the Manderson Place in *Redland II* did not exclude the 11 acres, we ordered the 11 acres to be transferred to the family trust when we directed the "Manderson Place" to be transferred to the family trust. It is true that we did not specifically exempt the 11 acres when describing the Manderson Place. *Redland II*, ¶ 4, 346 P.3d at 860. The district court's description of the Manderson Place in the 2013 Judgment addressed the 11 acres separately and did not include them in the disposition of Manderson Place. The 11 acres were covered in a distinct provision of that judgment and later removed by the First Rule 59(e) Order. We used the district court's order to identify the Manderson Place and did not address its separate requirement for the Kimseys to reconvey the 11 acres to Robert for trust placement. We did not discuss the First Rule 59(e) Order. When we directed the district court to amend its order to require Robert to immediately transfer the "Manderson Place" to the trust, our instruction did not include the 11 acres.

[¶33] The Redland Children also argue that our directive to "Robert Redland" requiring him to immediately transfer the Manderson Place to the family trust included the Kimseys and the 11 acres. They rely on footnote 1 in *Redland II*, where we stated that "[f]or ease of reference, we will . . . refer to . . . Robert Redland, individually, as trustee, and collectively with Lisa and Mike Kimsey, as 'Robert Redland' or 'Robert.'" *Redland II*, ¶ 1, 346 P.3d at 859 n.1. As we pointed out above, *Redland II* only addressed the provision that the Manderson Place be transferred to the family trust upon Robert's death. We directed that the Manderson Place be immediately transferred to the trust "subject to a life

estate in Robert Redland that shall terminate on his death." *Redland II*, ¶ 68, 346 P.3d at 880. The quoted language clearly applies only to Robert as it would make no sense in this context for "Robert Redland" to include the Kimseys. Equally relevant, the district court's order did not define "Robert" or "Robert Redland" as including the Kimseys.

[¶34] The Redland Children contend *Redland II* required the 11 acres to be transferred to the family trust because the issue has always been whether Robert was legally obligated to transfer the entire Manderson Place to the trust.[7] They claim absent a contention over the 11 acres, there would have been no reason to name the Kimseys, especially Mike Kimsey, as defendants. According to the Redland Children: "Surely being named as defendants[,] based on surreptitiously receiving a lease or transfer of family property that was the core issue in the case[,] gave the Kimseys ample notice that their rights with respect to the [11 acres] were squarely at issue in the litigation."

[¶35] The Kimseys were not on notice that this lawsuit involved the 11 acres. The Redland Children did not state a claim in their original or amended complaint for the setting aside of the sale of the 11 acres to the Kimseys. The complaints did seek to void the grazing lease between Robert and the Kimseys, which involved land separate from the Manderson Place, thereby explaining the Kimseys being named as defendants. Being named as defendants did not, without more, provide the Kimseys notice that the Redland Children sought to set aside the sale of the 11 acres. It was only after the 2013 Judgment "inadvertent[ly]" included a requirement that the Kimseys reconvey the 11 acres to Robert for placement in the family trust that the Kimseys had any notice that the 11 acres were at issue. They immediately and successfully moved under Rule 59(e) to have that requirement removed from the 2013 Judgment.

[¶36] The Redland Children contend we necessarily determined Robert's and Irene's transfer of the 11 acres to the Kimseys was void based on three district court findings not challenged but affirmed in *Redland II*. First, Robert and Irene were legally obligated to transfer the entire Manderson Place to the family trust as of 1989. Second, Robert and Irene had only a life estate in the Manderson Place as of 1989.[8] Third, the parties' agreements in 1989 disallowed individual ownership of the ranch properties. Based on these findings, they contend Robert and Irene could not legally transfer a fee simple in the 11 acres to the Kimseys in 2007, and the Kimseys could not individually own the 11 acres.

---

[7] If, as the Redland Children argue, this litigation always involved Robert's obligation to transfer the entire Manderson Place, including the 11 acres, to the trust, there would have been no reason on remand from *Redland II* for the Redland Children to have prepared a proposed judgment including separate provisions relating to the Manderson Place and the 11 acres.

[8] The Redland Children's arguments concerning when the Manderson Place was to be placed in the family trust are inconsistent and were inconsistent throughout the district court proceedings. On the one hand, they claim(ed) the Manderson Place was required to be placed in the trust in 1989 and on the other hand, they assert(ed) it was not to be placed in the trust until after Robert's and Irene's deaths. Our determination of this appeal does not require us to resolve the inconsistency.

12

[¶37] By upholding the district court's findings regarding the parties' 1989 agreements, we did not implicitly decide that the 2007 sale of the 11 acres to the Kimseys was void. The validity of the 2007 sale was not at issue in *Redland II*. The Redland Children's complaint did not assert a claim to void the sale, the issue was not litigated at trial, and the district court removed the requirement for the Kimseys to transfer the 11 acres to the trust in the First Rule 59(e) Order. The First Rule 59(e) Order was not appealed.

[¶38] The issue in *Redland II*—whether Robert was legally required to transfer the disputed property to the trust—did not raise, nor did we consider, any number of potential factors related to the validity of the sale of the 11 acres, including those raised by the Redland Children in this appeal. For example, Robert and Irene, through their individual trusts, sold the 11 acres to the Kimseys, raising the question of Irene's trust as a necessary party. Because the sale was to Lisa and Mike, the question arises as to Mike's knowledge of the parties' agreements prior to the sale or what other legal defenses he could present. There also appear to be third-party rights involved including mortgagors. Our determination that Robert made legally enforceable oral promises to transfer the disputed property to the trust in 1989–1992 did not implicate the validity of the sale of the 11 acres to the Kimseys.

[¶39] Because *Redland II* did not require the district court to enter a judgment on remand ordering the 11 acres to be transferred to the family trust, the district court correctly denied the Redland Children's motions and entered judgment exempting the 11 acres from being transferred to the family trust.

### III. *Did the district court abuse its discretion when it denied the Redland Children's motion to supplement their complaint to add a claim for the 11-acre parcel to be transferred to the trust?*

[¶40] The Redland Children argue that if *Redland II* did not determine the merits of the transfer of the 11 acres to the Kimseys and a separate resolution of that issue was necessary, then the district court should have allowed them to supplement their complaint under Rule 15(d). In response to the district court's determination that their Rule 15(d) motion was untimely, the Redland Children contend they only learned that the district court believed "there was still something to be litigated with respect to the 11 acres" in March 2016, after the district court modified the 2015 Judgment. In the months following that modification, they maintain they were consumed with trying to secure Robert's compliance with *Redland II*.

[¶41] W.R.C.P. 15(d) states:

> (d) *Supplemental Pleadings*. — On motion and reasonable notice, the court may, on just terms, permit a party to serve a

> supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

We have limited case law addressing Rule 15(d). However, other courts, when addressing similar rules, have stated supplementation under Rule 15(d) "should be freely granted unless the court finds that factors such as untimeliness, prejudice, bad faith, or futility of the amendment would make such a grant unjust." *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 56, 416 P.3d 401, 422. *See also Idaho First Bank v. Bridges*, 426 P.3d 1278, 1287 (Idaho 2018) ("Rule 15(d) motions to amend should be granted '[u]nless undue prejudice to the opposing party will result.'" (quoting *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986))). Also, "implicit in . . . Rule 15(d) [is] that a motion to supplement may be denied where the referenced events occurred before the filing of the original complaint." *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015). "Whether to permit an amendment or supplementation of the pleadings is within the sound discretion of the district court." *Slavens v. Bd. of Cnty. Comm'rs for Uinta Cnty.*, 854 P.2d 683, 687 (Wyo. 1993) (citing W.R.C.P. 15; *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992); *Narans v. Paulsen*, 803 P.2d 358, 363 (Wyo. 1990)).

[¶42]   The district court did not abuse its discretion when it, based on unreasonable delay, denied the Redland Children's Rule 15(d) motion to supplement their complaint with a claim for the 11 acres. The Redland Children have known since 2007 that Robert and Irene, through their individual trusts, had sold the 11 acres to the Kimseys. They did not include a claim to set aside that sale in the original complaint (filed in 2008) or in the amended complaint (filed in 2009). While the Redland Children may have believed it was enough to make a claim against Robert for conveyance of the Manderson Place to the family trust, any such belief was unreasonable once the district court issued the First Rule 59(e) Order in March 2014. This order removed the requirement that the Kimseys reconvey the 11 acres to Robert for placement in the trust but retained the requirement that the Manderson Place be transferred to the trust. The Redland Children did not appeal that order. They did not at that time seek to amend their complaint. After remand from *Redland II*, they presented the district court with a proposed judgment requiring reconveyance of the 11 acres to the trust. On motion from the Kimseys, the district court removed that provision from the 2015 Judgment. The Redland Children did not appeal, and over a year later, filed their Rule 15(d) motion. As the district court aptly stated:

> [The Redland Children] seek to add to their complaint the issue of the potential wrongful transfer to the Kimseys for the first time after ten years of litigation, two trials, and two appeals. The interests of finality and judicial economy weigh heavily in

14

this case, especially contrasted against [the Redland Children's] unexcused delay in filing their motion to supplement the pleadings.

The district court reasonably denied the Redland Children's Rule 15(d) motion. *See, e.g.*, *Slavens*, 854 P.2d at 687 (finding no abuse of discretion where motion to amend was filed four days after the district court had issued its decision letter); *Lane v. Skamania Cnty.*, 265 P.3d 156, 162 (Wash. Ct. App. 2011) (the district court did not abuse its discretion by denying the motion to supplement the pleadings to add a counterclaim more than three years after it matured and more than three years after trial and entry of judgment).

### IV. Did the district court abuse its discretion when it denied the Redland Children's request for their attorney fees and costs?

[¶43] The Redland Children maintain the district court abused its discretion by refusing to award them attorney fees and costs through the present appeal. They claim they were entitled to their attorney fees under the Uniform Trust Code (UTC), Wyo. Stat. Ann. §§ 4-10-1001(b) and 4-10-1004. They contend the district court determined in the 2013 Judgment that they should be awarded costs, and we affirmed that judgment in *Redland II*. They argue that, at a minimum, costs through *Redland II* should be awarded, and in light of the award of costs through *Redland II*, it would be unreasonable not to award them their costs through the present appeal.

[¶44] The Redland Children were awarded their costs through *Redland II*. In the 2013 Judgment, the district court stated the Redland Children were "entitled to submit applications for costs." While the parties failed to designate these matters as part of the appellate record, the docket sheet shows that in response to the 2013 Judgment, the Redland Children submitted their applications for costs, Robert and the Kimseys objected to those applications, and the district court issued an order and judgment awarding the Redland Children $4,816.85 in costs. The record reveals no further requests for costs, just attorney fees. We will not consider their request for costs. *Lawrence v. City of Rawlins*, 2010 WY 7, ¶ 15, 224 P.3d 862, 869 (Wyo. 2010) ("We have said many times that we will not consider on appeal issues not raised below." (citing *Wyo. Bd. of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 16, 185 P.3d 666, 670 (Wyo. 2008); *Adams v. State*, 2005 WY 94, ¶ 27, 117 P.3d 1210, 1219 (Wyo. 2005); *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo. 2005))).

[¶45] Turning to their request for attorney fees, "Wyoming follows the American rule regarding attorney fees, which provides that each party is responsible for his or her own attorney fees." *Acorn v. Moncecchi*, 2016 WY 124, ¶ 84, 386 P.3d 739, 763 (Wyo. 2016) (citing *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 29, 360 P.3d 1006, 1016 (Wyo. 2015); *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012)). Under this rule, attorney fees are recoverable only where authorized by a

contractual or statutory provision. *Id.* Whether there is legal authority to award attorney fees is a question of law which we review de novo. *Id.* ¶ 83, 386 P.3d at 763 (quoting *Shriners Hosps. for Child. v. First N. Bank of Wyo.*, 2016 WY 51, ¶ 102, 373 P.3d 392, 417 (Wyo. 2016)). The final attorney fee award is reviewed for an abuse of discretion. *Id.*

[¶46] On remand from *Redland II*, the Redland Children moved for their attorney fees under the UTC, which authorizes attorney fees as follows:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Wyo. Stat. Ann. § 4-10-1004 (LexisNexis 2025). The district court decided the UTC allowed for an award of attorney fees but determined the UTC did not apply because not all parties had consented to its application to the family trust. The district court also decided "the interests of justice and equity are best served by following the traditional rule with all parties paying their own fees" because the "case ha[d] been highly contested with both sides actively seeking to defend their positions."

[¶47] The district court did not abuse its discretion by denying the Redland Children's request for their attorney fees. The Redland Children do not address the district court's determination that the UTC does not apply to the family trust. Even if we were to assume, without deciding, that the UTC applies to this case, the outcome would not change. While the Redland Children successfully obtained, *inter alia*, a judgment ordering Robert to convey the disputed property to the family trust and voiding the grazing lease, they failed to include a claim to set aside the sale of 11 acres to the Kimseys. The Redland Children did not appeal the First Rule 59(e) Order removing the requirement that the Kimseys reconvey the 11 acres from the 2013 Judgment. Yet, on remand from *Redland II*, they prepared a proposed judgment including the same requirement removed from the 2013 Judgment. The Kimseys sought and obtained a modification of that judgment. The Redland Children again did not appeal but filed various motions seeking relief from the modified judgment. The district court denied those motions and this appeal followed. Under these circumstances, the district court reasonably determined the interests of justice and equity are best served by the parties paying their own attorney fees.

## *CONCLUSION*

[¶48] We have jurisdiction over this appeal and deny the Kimseys' motion to dismiss. The district court did not err or otherwise abuse its discretion when it denied the Redland Children's motions asking for a judgment that the 11 acres be transferred to the family trust. The district court did not abuse its discretion when it denied the Redland Children's

Rule 15(d) motion or their request for attorney fees.  The Redland Children were awarded their costs through *Redland II* and did not make any further requests for costs.  We affirm.